

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| PRIMITIVO SOTO, | ) |
| | ) |
| Respondent, | ) |
| | )  **WD78701** |
| v. | ) |
| | )  **OPINION FILED:** |
| | )  **October 18, 2016** |
| COSTCO WHOLESALE CORP., | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Robert M. Schieber, Judge**

**Before Division IV:** Mark D. Pfeiffer, Chief Judge, and
James Edward Welsh and Alok Ahuja, Judges

Costco Wholesale Corporation ("Costco") appeals from the judgment of the Circuit Court

of Jackson County, Missouri, entered following a jury verdict in favor of Mr. Primitivo Soto

("Soto") on his retaliation claim under the Missouri Human Rights Act ("MHRA"). We affirm

the trial court's judgment as modified. We also grant Soto's motion for attorney's fees, which was

taken with the case.

## Factual and Procedural Background[1]

Soto was hired by Costco on October 22, 1990. In 2006, Soto was promoted to assistant

general manager of Costco's midtown Kansas City, Missouri, warehouse under warehouse

---

[1] "We view the evidence in the light most favorable to the verdict, disregarding evidence to the contrary." *Turner v. Kansas City Pub. Sch.*, 488 S.W.3d 719, 722 (Mo. App. W.D. 2016).

manager Mr. Brett Mittone ("Mittone"). In 2008, Soto was transferred to Costco's Independence, Missouri, warehouse where he worked as assistant general manager, again under Mittone. Mittone's performance reviews of Soto while working as an assistant warehouse manager were favorable. In 2010, Soto noticed that Hispanic supervisors at the Independence warehouse under Mittone "weren't really getting support or guidance on how to do their jobs" and that "there was some definite higher expectations than normal." Soto saw that the Independence warehouse organizational chart contained very few Hispanics, and he noticed that Latino workers were "not supported, they weren't given the opportunity to get their jobs done, they weren't given the tools necessary for them to be successful."

On June 13, 2011, Soto was transferred to Costco's midtown Kansas City, Missouri, warehouse. In late July or early August 2011, Soto had a conversation with Mr. Clin Warren ("Warren"), the midtown warehouse general manager, about Soto's concerns that Latino employees at the Independence warehouse were treated unfairly, were passed over for promotions, and were discriminated against. Warren suggested that Soto contact Mr. Dan McMurray ("McMurray"), the regional operations manager in Chicago. Warren told Soto he would also contact McMurray because Soto's allegations were "pretty heavy," and Warren would have to "take them up the chain."

After Soto's conversation with Warren about what Soto perceived as discrimination by Mittone, there was a noticeable change in Soto's relationship with Warren. According to Soto, "I couldn't do anything right. And [Warren] was nitpicking pretty much everything I did . . . ."

By September 2011, Soto had not been contacted about his report to Warren, so he sent an email to Mr. John Gaherty, a Costco regional manager in Chicago, asking to talk about his concerns. Soto received a call from McMurray, who agreed to meet with Soto the next time he

was in Kansas City. A couple of weeks later, Soto met with McMurray and requested that he investigate discrimination against Latinos at the Independence warehouse, specifically mentioning instances that he was personally aware of in which he believed Hispanic managers were being unfairly forced out of the company. McMurray "investigated" Soto's allegations by conversing with Mittone and, shortly thereafter, advised Soto that he had found no evidence of wrongdoing.

On Saturday, November 12, 2011, the midtown Costco warehouse had a "rapid receive" delivery from the Costco depot. Products in "rapid receive" or "blind receive" deliveries are unloaded and stocked, and receipt is not verified when the product comes off the truck. If receiving errors are discovered, adjustments are made by the store auditor and approved by the warehouse manager. On Monday, November 14, 2011, when the items received on November 12 were matched with the product tags, it was discovered that a seafood pallet was missing from the November 12 delivery. The receiving manager emailed the Costco depot and the other managers regarding the discrepancy.

On Monday, November 21, 2011, Mr. Larry Thompson ("Thompson"), the midtown Costco meat department manager, was inventorying the meat department. He asked Soto in passing, "Hey, what are we going to do with that fish? You know, are you going to count the stuff for now, wait and see if we can find it, what are we going to do?" Soto told him to tentatively count the pallet ($3,000 in seafood inventory) for right now. Thompson obtained a list of the missing seafood items and provisionally entered them into the inventory so they could easily be removed later if necessary.

That same day, Soto made contact with both Warren and the regional meat manager, Mr. Steve Tarantino ("Tarantino"), about the missing seafood pallet from the November 12th "rapid receive" delivery and sought their advice. In other words, Soto did not hide the inventory

3

matter from his superiors; instead, he sought them out for advice on how to handle the situation. Both instructed Soto that the missing inventory should not be added to the store's inventory. Thereafter, and within one day of Soto's initial instruction to Thompson to tentatively include the missing seafood pallet in inventory, it was removed from the inventory. However, prior to this inventory adjustment, Thompson emailed Tarantino to notify him that the missing seafood pallet had been added to the meat department inventory at Soto's direction (prior to Soto inquiring with his superiors about how they wished for him to handle the missing inventory situation), even though it had not been received.

After Warren was informed that the missing seafood pallet had been counted in his store's inventory, Warren contacted McMurray to inform him that Soto had instructed Thompson to count the missing seafood pallet items in inventory. McMurray directed Warren to conduct an investigation. On November 25, 2011, Warren and Mr. Bruce Miles, general manager of Costco's Lenexa warehouse, interviewed Soto. On that date, Soto was issued an Employee Counseling Notice, which stated that Soto was suspended for two weeks, one week without pay, due to his violation of Costco's Manager's Standards of Ethics regarding falsification of company records, specifically, inventory forms. Thereafter, on December 13, 2011, Soto was demoted to a front-end manager position, which resulted in a significant decrease in compensation.

Soto lost approximately $85,000 in income as a result of the demotion. He also received a lower 401(k) match, and he no longer qualified for stock options or for a bonus based on company performance. Soto was impacted emotionally by the allegations that he was dishonest and unethical (especially where he had explained the inventory situation to his superiors and sought their advice on the same day he was notified of the seafood pallet issue) and by his resulting suspension and demotion.

4

In February 2012, Soto was transferred to Costco's Lenexa, Kansas, warehouse. Also in 2012, Soto filed a charge of discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights. On May 6, 2013, Soto filed a petition for damages in the Circuit Court of Jackson County, Missouri, alleging that Costco and Warren violated the MHRA when he was suspended and demoted to a position that paid less compensation in retaliation for his report of discrimination against Latino employees at Costco's Independence, Missouri, warehouse.

After a six-day trial, on February 4, 2015, the jury found in favor of Soto and against Costco and awarded Soto $250,000 in damages. On February 23, 2015, Soto's attorney filed a motion for attorney's fees, costs, pre-judgment and post-judgment interest. The trial court entered its judgment on March 18, 2015, for Soto on the jury's verdict and awarded him $234,890 in attorney's fees; $10,077.14 in costs; $11,250 in pre-judgment interest; and post-judgment interest of 5% on the verdict and pre-judgment interest award, and 9% on the attorney's fees and costs awarded in the judgment.

Costco filed a motion for a new trial or, in the alternative, for remittitur, and a motion for judgment notwithstanding the verdict ("JNOV") on April 17, 2015. The trial court entered its order denying Costco's post-trial motions on May 27, 2015.

Costco timely appealed.

**Deficient Jurisdictional Statement**

Before addressing Costco's points on appeal, we must address the issue raised by Soto that Costco's jurisdictional statement is defective and violates Rule 84.04. Rule 84.04(a) requires that the appellant's brief contain a concise statement of the grounds on which jurisdiction of the appellate court is invoked. Rule 84.04(b) provides:

Jurisdictional Statement. Bare recitals that jurisdiction is invoked 'on the ground that the construction of the Constitution of the United States or of this state is involved' or similar statements or conclusions are insufficient as jurisdictional statements. The jurisdictional statement shall set forth sufficient factual data to demonstrate the applicability of the particular provision or provisions of Article V, section 3, of the Constitution whereon jurisdiction is sought to be predicated.

Costco's jurisdictional statement reads:

Costco Wholesale Group ("Costco") appeals from the Circuit Court of Jackson County, Missouri's May 27, 2015 Final Judgment and Order on Defendant's Motion for Judgment Notwithstanding the Verdict and Defendant's Motion for New Trial or, in the Alternative, Remittitur, and the Order on Soto's Motion for Attorney's Fees. Jurisdiction lies in the Western District under Mo. Rev. Stat. § 477.070.

Costco's jurisdictional statement does not comply with Rule 84.04(b) because: (1) it does not clearly identify what final, appealable judgment of the Circuit Court of Jackson County, Missouri, is being appealed; and (2) it is a "bare recital" of our jurisdiction being invoked under section 477.070; it does not set forth "sufficient factual data" to demonstrate that this case is within the provision of article V, section 3 of the Missouri Constitution assigning general appellate jurisdiction to the court of appeals rather than within the provision assigning exclusive jurisdiction to the supreme court.

Although Costco's violation of Rule 84.04 is a sufficient basis upon which to dismiss its appeal, we choose to exercise our discretion not to do so "because we are able to determine our jurisdiction from [Costco's] brief and the record and because it is our preference to dispose of cases on the merits rather than to dismiss them for deficiencies in the briefs." *Robin Farms, Inc. v. Bartholome*, 989 S.W.2d 238, 245 (Mo. App. W.D. 1999). Accordingly, we will review the merits of Costco's appeal, *ex gratia*. However, we caution Costco's counsel that henceforth counsel should make every effort to comply with Rule 84.04. *Id.* at 245; *Buttress v. Taylor*, 62 S.W.3d 672, 677 (Mo. App. W.D. 2001).

6

**Standard of Review**

Costco raises seven points on appeal, six of which challenge the trial court's denial of Costco's post-trial motions, and one of which challenges the trial court's award of attorney's fees and costs. The appropriate standard of review will be included under the analysis of each point.

**Analysis**

**Point I**

In Costco's first point, it asserts that the trial court erred in denying its motion for JNOV because Soto failed to present sufficient evidence to support his retaliation claim under the MHRA.

The standard for reviewing the trial court's denial of a motion for JNOV is essentially the same as for reviewing the denial of a motion for directed verdict. *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 204 (Mo. App. W.D. 2013). "A case may not be submitted unless legal and substantial evidence supports each fact essential to liability." *Id.* (internal quotation omitted). Because a trial court's grant of a motion for JNOV is a drastic action, it should be done only when reasonable persons could not differ on the correct disposition of the case. *Id.* Whether the plaintiff made a submissible case is a question of law, which we review *de novo*. *Id*.

Under the MHRA, it is an unlawful discriminatory practice to retaliate "in any manner" against an employee who "has opposed any practice prohibited by this chapter" or "has filed a complaint . . . pursuant to this chapter." § 213.070(2). To make a submissible case on Soto's retaliation claim under the MHRA, he was required to establish that: (1) he complained of discrimination; (2) Costco took adverse action against him; and (3) a causal relationship existed between the complaint and the adverse action. *Minze v. Mo. Dep't of Pub. Safety*, 437 S.W.3d 271, 275 (Mo. App. W.D. 2014). Soto must satisfy the causation standard by demonstrating that his complaint of discrimination was a "contributing factor" to Costco's adverse employment

action. *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 383 (Mo. banc 2014). "A contributing factor is a condition that contributes a share in anything or has a part in producing the effect." *Turner v. Kansas City Pub. Sch.*, 488 S.W.3d 719, 723 (Mo. App. W.D. 2016) (internal quotation omitted). If Soto's protected activity was even one contributing factor in Costco's decision to act in reprisal against him, then there was an unlawful retaliation. *See Walsh v. City of Kansas City*, 481 S.W.3d 97, 106 (Mo. App. W.D. 2016).

"A retaliation claim is not conditioned on the success of the underlying discrimination or harassment claim." *Minze*, 437 S.W.3d at 275-76. "Thus, it is irrelevant to a claim of retaliation that the act complained of was not legally actionable. The only issue is whether the person making the complaint had a reasonable good faith belief that there were grounds for the claim of discrimination or harassment." *Id.* at 276.

"Cases involving claims of retaliatory motive are inherently fact-based and often depend on inferences rather than on direct evidence." *Turner*, 488 S.W.3d at 723 (internal quotation omitted). Thus, Soto can rely on circumstantial evidence that tends to support an inference of retaliatory motive. *Id.* To withstand a motion for JNOV, Soto was required to "make a submissible case by offering substantial evidence to support every fact essential to a finding of liability." *Turner*, 488 S.W.3d at 722 (internal quotation omitted). "We view the evidence in the light most favorable to the verdict, disregarding evidence to the contrary." *Id.* "We will reverse the jury's verdict only where we find a complete absence of probative facts to support the jury's conclusion." *Id.* (internal quotation omitted).

Soto offered substantial evidence to make a submissible case on his retaliation claim under the MHRA. He established that:

8

- He twice reported his belief that Latino workers at Costco's Independence warehouse were being discriminated against. Soto testified that he was transferred to Costco's midtown Kansas City, Missouri, warehouse on June 13, 2011, and in late July or early August 2011, he had a conversation with Warren about his concerns that Latino employees at the Independence warehouse were treated unfairly, were passed over for promotions, and were discriminated against. Subsequently, in September or October of 2011, Soto met with McMurray and advised him of discrimination at the Independence warehouse. Warren and McMurray both admitted that Soto talked to them about his concerns regarding discrimination at the Independence warehouse.

- Costco took adverse action against Soto. On November 25, 2011, Costco advised Soto that he was suspended for two weeks—one of those weeks was without pay. Thereafter, on December 13, 2011, Soto was demoted to a front-end manager, a position with a significant reduction in compensation.

- A causal relationship existed between Soto's complaint of discrimination and his demotion. "Direct evidence shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actually motivated the employment decision." *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 867 (Mo. App. E.D. 2009) (internal quotation omitted). At trial, Warren testified:

  Q:    Mr. Warren, did Primo Soto come to your store in June of 2011?

  A:    Yes, sir.

  Q:    Shortly after that did Mr. Soto talk to you about concerns he had regarding discrimination in the Independence store?

  A:    He spoke to me about what he believed to be some concerns at his previous location, yes.

9

Q:     Was that in June?

A:     I believe it was July, August.

Q:     July, August?

A:     Yes, sir.

. . . .

Q:     Did you suspend Mr. Soto after he spoke to you regarding discrimination?

A:     . . . Yes. I suspended him for a violation. It was in November.

Q:     Did Costco demote him after he spoke to you about discrimination that he felt was going on at the Independence store?

A:     Yes.

Q:     Did that demotion cause him to lose pay?

A:     Yes.

In addition to this evidence, Soto offered circumstantial evidence that supported an inference that his report of possible discrimination was a factor directly contributing to his suspension and demotion. Circumstantial evidence probative of retaliatory motive includes:

- Evidence of a good work record prior to making complaint: Where an employee has a good work record prior to making a complaint, including positive feedback from management, and the majority of the alleged performance issues occurred after the complaint, this evidence can provide a sufficient basis from which a jury could find that the performance issues raised by the employer were pretextual. *Id.* at 867-68. Soto testified that from 2001 to his demotion, he was consistently promoted: from foods manager, to receiving manager, to assistant general manager, to assistant warehouse manager. Warren testified that Soto was, in fact, a good employee. However, Warren—the first person to whom Soto reported the discrimination—recorded five pages of primarily minor

10

performance issues involving Soto that occurred during Soto's tenure at the midtown Costco location. Warren did not write up Soto for any of the incidents described in the "shadow file." In October 2011, however, Warren shared the file on Soto with McMurray, the second person to whom Soto reported the discrimination. This evidence lends support to Soto's assertion that his alleged performance deficiency was pretexual.

- Temporal proximity: Where an employer asserts that adverse action was taken against the employee due to violation of company policies and poor job performance, if there is evidence that the alleged performance issue occurred after the complaint, this evidence is certainly relevant to a jury's determination that the performance issues raised by the employer were pretextual. *Id.* at 868. Soto had a conversation with Warren about his concerns of discrimination at the Independence warehouse in late July or early August 2011. In September or October of 2011, Soto met with McMurray and advised him of the possible discrimination. Shortly thereafter, even though Soto had asked for advice from his superiors about the inventory issue immediately after discovering it, Costco alleged that Soto violated the company's Manager's Standard of Ethics by falsifying company records during the November 21, 2011 inventory by tentatively instructing the meat manager to count a pallet of seafood that was not present before he had discussed the issue with his superiors.

- Atypical employment action: "While the requisite causal connection may be proved circumstantially by showing the [adverse employment action] followed the protected activity so closely in time as to justify an inference of retaliatory motive, generally more than a temporal connection between protected activity and an adverse employment action is required to show a genuine factual issue on retaliation exists." *Id.* at 868-69. Soto

presented evidence that managers in situations similar to or worse than Soto's received no discipline. Soto presented evidence of five incidents of similar inventory discrepancies where other Costco managers received no punishment. Soto's wife, an auditor with Costco, testified concerning inventories in which she observed managers counting items that were not physically in the warehouse with no discipline of any kind being issued, including an occasion when she witnessed *Warren* count items in an inventory that were not physically in the warehouse. These facts provide further support for Soto's contention that sufficient evidence was presented to make a submissible case for retaliation, and that sufficient facts existed to support the jury's verdict.

- Credence of proffered explanation: "Another form of circumstantial evidence that is probative of retaliatory motive is [p]roof that the defendant's [proffered] explanation is unworthy of credence." *Turner*, 488 S.W.3d at 724 (internal quotation omitted). Costco claimed that Soto was suspended and demoted because of his falsification of company records when he instructed the meat manager to count in inventory merchandise that was not present in the warehouse, and for violating the manager's ethics policy by not being honest and forthright about the incident. However, Soto had, in fact, been forthright with his superiors about the inventory issue immediately after discovering it, and the missing pallet of seafood was in the midtown warehouse's inventory for only one day before the error was corrected. Soto's wife, a Costco auditor, testified that inventory errors, particularly receiving errors, occur frequently and that one of the warehouse auditor's responsibilities is to make adjustments, with the warehouse manager's approval, to inventory errors. Another Costco employee also agreed that inventory mistakes are corrected without demoting or firing employees. From this evidence, the jury could have

12

rejected Costco's proffered reasons for suspending and demoting Soto and inferred from that disbelief that Costco had a retaliatory motive in using the inventory error as its rationale for demotion where it had not done so with other employees in the past.

Upon reviewing the record in the light most favorable to Soto, we find there was sufficient competent evidence to support the jury's determination that Soto's charge of discrimination against Costco was a contributing factor in Costco's decision to suspend and demote Soto. Accordingly, the trial court properly denied the motion for JNOV.

Point I is denied.

## Point II

Costco asserts in its second point that the trial court committed "instructional error in that the verdict director (Instruction Nos. 6 and 7) submitted two disjunctive bases for liability (suspension or demotion) and there was insufficient evidence to support a finding for [Soto] under both submissions."[2]  Specifically, Costco claims that there was no substantial evidence in the record that its suspension of Soto was in retaliation for his complaint of discrimination.  Instead, Costco submits that it suspended Soto solely based on his conduct in connection with the inventory incident involving the missing seafood pallet.  Costco characterizes the evidence as "undisputed" that Soto was "automatically" "suspended immediately" after instructing Thompson to count the seafood pallet during the November 2011 inventory.

Contrary to Costco's characterization, the evidence showed that inventory errors, particularly receiving errors, occurred frequently and that one of the warehouse auditor's responsibilities was to make adjustments, with the warehouse manager's approval, to inventory

---

[2] *See Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 513 (Mo. App. W.D. 2010) ("Where the jury is instructed in the alternative or the disjunctive on two grounds of liability, there must be a submissible case for both submissions.").

errors. The evidence also showed that inventory mistakes were routinely corrected without employee discipline being imposed. In evidence were examples of other Costco managers who had counted items that were not physically in their warehouses with no discipline imposed.

Soto's conversation with Warren about Soto's concerns about discrimination at the Independence warehouse took place in late July or early August 2011. Thereafter, Soto's relationship with Warren noticeably changed. During Soto's tenure at the midtown Costco location, Warren recorded five pages of primarily minor performance issues involving Soto (though none were apparently of sufficient concern to discuss them with Soto) and Warren brought those performance issues to the attention of supervisory authorities immediately after the inventory glitch became an issue for Soto. Warren was one of the Costco managers who investigated Soto and issued Soto an Employee Counseling Notice on November 25, 2011, suspending Soto for allegedly falsifying company records regarding the missing pallet of seafood, despite the fact that the missing pallet of seafood was in the midtown warehouse's inventory for only one day before the error was corrected, and Soto had brought the inventory dilemma to the attention of two supervisors on the day he became aware of the issue.

From the foregoing evidence, the jury could have rejected Costco's proffered reasons for suspending Soto and inferred that Costco had a retaliatory motive in doing so. Viewing the evidence in the light most favorable to the verdict, *Basta v. Kansas City Power & Light Co.*, 456 S.W.3d. 447, 455 (Mo. App. W.D. 2014), there is substantial circumstantial evidence that Soto's report of discrimination was a "contributing factor" to his suspension. "Thus, the challenged theory of liability submitted to the jury was supported by substantial evidence to make a submissible case." *Id.*

Point II is denied.

## Point III

In Costco's third point, Costco asserts instructional error. Specifically, Costco claims that Instruction No. 8 improperly allowed and directed the jury to award "future damages." However, Costo does not argue that the damages instruction misdirected, misled, or confused the jury nor that it was prejudiced because of instructional error. *Sorrell v. Norfolk S. Ry. Co.*, 249 S.W.3d 207, 209 (Mo. banc 2008) ("To reverse on grounds of instructional error, the party claiming instructional error must establish that the instruction at issue misdirected, mislead, or confused the jury. Additionally, prejudice must have resulted from the instructional error."). Instead, Costco argues that the evidence was insufficient for the jury to award future damages and that any award could only be based on speculation and conjecture. This new claim of error is not preserved for our review because it is not within the scope of Costco's point relied on. *See Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 109 n.12 (Mo. App. W.D. 2015) (citing Rule 84.04(e)).

Point III is denied.

## Point IV

In Costco's fourth point, Costco again asserts instructional error. Costco avers that the trial court erred in submitting the verdict form to the jury because the verdict form did not provide separate lines for lost wages and other compensatory damages. Costco contends that as a result of this error, the jury was allowed to award future lost wages that it was not authorized to award.

"We review the propriety of a verdict form *de novo*." *Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*, 449 S.W.3d 16, 28 (Mo. App. W.D. 2014) (citing *Edgerton v. Morrison*, 280 S.W.3d 62, 65-66 (Mo. banc 2009)). "A 'verdict form, like an instruction, should not misdirect, mislead, or confuse the jury.'" *Id.* (quoting *Edgerton*, 280 S.W.3d at 67).

Rule 71.01 defines the two types of verdicts a jury may render:

The verdict of a jury is either general or special. A general verdict is one by which the jury pronounces generally upon all or any of the issues, either in favor of the plaintiff or defendant, and includes a verdict wherein the jury returns a finding of the plaintiff's total damages and assesses percentages of fault. A special verdict is one by which the jury finds the facts only, leaving the judgment to the court.

As indicated by the verdict directing instructions, Soto sought only the recovery of money damages at trial. Because this was a case for money damages only, Rule 71.02[3] requires a general verdict: "In every issue for the recovery of money only . . . the jury shall render a general verdict." *See also Mathes v. Sher Express, L.L.C.*, 200 S.W.3d 97, 106 (Mo. App. W.D. 2006).

"The law is well-settled that where an MAI instruction applies to the case, the use of such instruction is mandatory." *Thomas v. McKeever's Enters. Inc.*, 388 S.W.3d 206, 215 (Mo. App. W.D. 2012) (internal quotation omitted). "Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject." Rule 70.02(b). Verdict A submitted to the jury was patterned after MAI 36.11 [1980 Revision], as modified by MAI Illus. 35.19, No. 14, and provided in relevant part:

> We, the undersigned jurors, assess the compensatory damages of plaintiff Primo Soto as follows:
>
> For actual damages $_____ *(stating the amount).*

This general verdict form was an approved MAI instruction and its use was mandatory. Accordingly, the trial court did not err in submitting the verdict form to the jury.

Point IV is denied.

---

[3] Rule 71.02 is identical to section 510.230. Committee Comment–1959 to Rule 71.02 explains why a paragraph in the original proposed rule that provided for a discretionary special verdict in the form of special findings on each issue of fact was omitted: "(1) it is a radical change in the existing practice; (2) experience with similar provisions has not been uniformly satisfactory; (3) the Bar overwhelmingly opposed the discretionary special verdict system in all cases."

**Point V**

In Costco's fifth point, Costco asserts yet another claim of instructional error. However, Costco does not argue that the instruction itself was improper. Instead, Costco contends, without authority, that the verdict form violated federal tax law by obscuring the amounts of the verdict that would and would not be subject to federal tax withholding and matching contributions for Social Security and Medicare.

As a threshold matter, we must determine if this issue is moot. *Brown v. Hein (In re Estate of Pethan)*, 475 S.W.3d 722, 726 (Mo. App. W.D. 2015). "An appellate court is obligated to examine an appeal for mootness either upon motion of a party or acting *sua sponte*." *Id.* (internal quotation omitted). Mootness is a threshold issue to appellate review and implicates the justiciability of a controversy. *Id.* "To exercise appellate jurisdiction, there must be an actual controversy that is susceptible of some relief." *Id.* (internal quotation omitted). If a court's decision is unnecessary or if granting effectual relief is impossible, the case is moot and should be dismissed.[4] *Id.*

The Internal Revenue Code defines gross income as all income from whatever source derived, including (but not limited to) "compensation for services, including fees, commissions, fringe benefits, and similar items." 26 U.S.C. § 61(a)(1). Generally, discrimination suits, such as Soto's, generate compensatory, contractual, and/or punitive damages awards. Damages received to compensate an individual for economic loss, for example, lost wages, are not excludable from gross income unless a personal physical injury caused such loss. 26 U.S.C. § 104(a)(2). Emotional distress is specifically excluded from the definition of physical injury or physical sickness, and

---

[4] Although there are recognized exceptions to the mootness doctrine—where a case becomes moot after it is argued and submitted or where a case presents an unsettled issue of public interest that is likely to recur and to evade review—neither exception applies here. *Brown v. Hein (In re Estate of Pethan)*, 475 S.W.3d 722, 728 n.4 (Mo. App. W.D. 2015).

therefore not excludable from gross income, except where damages are paid for medical care attributable to such distress. *Id.* To illustrate, Revenue Ruling 96-65, 1996-2 C.B. 6 applies to employment related discrimination suits and holds:

> Current section 104(a)(2) - (after August 20, 1996). Back pay received in satisfaction of a claim for denial of a promotion due to disparate treatment employment discrimination under Title VII is not excludable from gross income under section 104(a)(2) because it is completely independent of, and thus is not damages received on account of, personal physical injuries or physical sickness under that section. Similarly, amounts received for emotional distress in satisfaction of such a claim are not excludable from gross income under section 104(a)(2), except to the extent they are damages paid for medical care (as described in section 213(d)(1)(A) or (B)) attributable to emotional distress.

Here, Soto presented evidence of approximately $85,000 in lost income as a result of the demotion, a lower 401(k) match, and disqualification relating to stock options and company bonuses. Soto also presented evidence that he was impacted emotionally by the allegations that he was allegedly dishonest and unethical and by his suspension and demotion.

Because the Internal Revenue Code effectively eliminates the exclusion from gross income of damages received to compensate for economic loss and emotional distress arising out of claims for discrimination, any decision resolving Costco's complaint in this point would have no practical effect. Accordingly, this point on appeal is rendered moot.

Point V is dismissed.

## Point VI

In Costco's sixth point, it asserts that the trial court erred in failing to order remittitur of the jury's damages award. It argues that remittitur was appropriate because the award of $250,000 was excessive in light of the evidence.

Section 537.068 permits a court to reduce the damages awarded to the plaintiff if, "after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is

excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages."  The statutory remittitur procedure is further refined by Rule 78.10(b), which provides that, "[i]f the court sustains the motion [for remittitur] in whole or in part, the court's order shall afford each party opposing such relief the option to file an election of a new trial."  The purpose of the statutory remittitur procedure "is not to correct juror bias and prejudice, but to correct a jury's honest mistake in fixing damages."  *Stewart v. Partamian*, 465 S.W.3d 51, 59 (Mo. banc 2015) (internal quotation omitted).  When a trial court overrules a motion for remittitur, the proper appellate standard dictates that the evidence will be considered in the light most favorable to the trial court's ruling.  *Badahman v. Catering St. Louis*, 395 S.W.3d 29, 39-40 (Mo. banc 2013).

"The mere size of the verdict does not in and of itself establish that it was the result of bias or passion and prejudice without showing some other error was committed during the trial." *Mackey v. Smith*, 438 S.W.3d 465, 480 (Mo. App. W.D. 2014) (internal quotation omitted). "Moreover, to warrant remittitur or new trial due to excess, the size of the verdict must be so grossly excessive as to shock the conscience because it is glaringly unwarranted."  *Id.* (internal quotation omitted).  In our review of verdicts to determine if they are excessive, we overturn only those verdicts that are obviously out of line and grossly improper.  *Id.*

Soto tallied approximately $85,000 in lost income as a result of the demotion.  He also received a lower 401(k) match and no longer qualified for stock options or for a bonus based on company performance.  The actual damages recoverable under the MHRA may include awards for emotional distress and humiliation.  *State ex rel. Sir v. Gateway Taxi Mgmt. Co.*, 400 S.W.3d 478, 491 (Mo. App. E.D. 2013).  Damages for emotional distress and humiliation may be "established by testimony or inferred from the circumstances."  *Id.*  "Intangible damages, such as pain,

suffering, embarrassment, emotional distress, and humiliation do not lend themselves to precise calculation." *Id.* (internal quotation omitted). "Each case requires individualized contemplation and consideration by the trier of fact." *Id.* at 491-92. Soto testified that he was impacted emotionally by the allegations that he was dishonest and unethical and by his suspension and demotion. His wife testified that Soto was humiliated and devastated by his suspension and then demotion. She observed his loss of self-esteem and self-worth. He became withdrawn, quiet, and sad. Soto's friend, Mr. Robert Thomas, testified that he observed Soto was very sad or depressed over his demotion.

When the evidence is viewed in the light most favorable to the trial court's order, we cannot say that the jury's verdict was excessive. Thus, the trial court did not abuse its discretion in denying Costco's motion for remittitur.

Point VI is denied.

## Point VII

In Costco's seventh point, it asserts that the trial court erred in granting Soto's motion for attorney's fees and costs. Costco contends that the trial court's award was excessive because Soto's counsel's hourly rate and the number of hours billed were unreasonable, certain costs were not recoverable and were excessive, and the claimed pre-judgment and post-judgment interest was excessive.

The trial court's award of reasonable attorney's fees is reviewed for an abuse of discretion. *Walsh v. City of Kansas [City]*, 481 S.W.3d 97, 113 (Mo. App. W.D. 2016). The trial court is considered an expert on fees, given its familiarity with all of the issues in the case and with the character of the legal services rendered. *Id.* "The trial court may determine attorney fees without the aid of evidence." *Id.* We presume an award of attorney's fees is correct, and it is the

20

complaining party's burden to prove otherwise. *Id.* We will reverse only if it is shown that the award of attorney's fees was against the logic of the circumstances and was so arbitrary and unreasonable as to shock our sense of justice. *Id.* The factors trial courts consider when making a determination as to reasonable attorney's fees include: (1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; (2) the number of hours reasonably spent on the litigation; (3) the nature and character of the services provided; (4) the degree of professional expertise required; (5) the nature and importance of the subject matter; (6) the amount involved or the result obtained; and (7) the vigor of the opposition. *Id.*

"Awarding costs and expenses is within the sound discretion of the trial court and should not be reversed absent a showing that the trial court abused its discretion." *Riggs v. State Dep't of Soc. Servs.*, 473 S.W.3d 177, 182 (Mo. App. W.D. 2015) (internal quotation omitted). "A trial court abuses its discretion if an award of costs in a judgment was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.* (internal quotation omitted).

The MHRA authorizes a court to award "court costs and reasonable attorney fees to the prevailing party, other than a state agency." § 213.111.2. "Section 213.111.2 is structured to recognize attorneys' fees as a matter of course to prevailing claimants." *Walsh*, 481 S.W.3d at 114 (internal quotation omitted). "In human rights cases, the amount of the verdict or judgment may have little bearing on the amount of attorneys' fees." *Id.* (internal quotation omitted). "While a court might consider the extent to which a plaintiff prevailed on some claims and not on others, [t]he efforts of the prevailing attorneys . . . should not be discounted where the effort and proof

were the same for the claims on which [the plaintiff] prevailed and those on which [the plaintiff] did not." *Id.* (internal quotation omitted).

Soto requested an award of attorney's fees in the amount of $234,890 and an award of costs in the amount of $10,077.14. Soto's motion was supported by billing records and by affidavits of attorneys representing plaintiffs in employment discrimination cases stating that the hourly rates requested by Soto's attorneys were reasonable and well within the prevailing rate charged by employment law attorneys in the area. Costco filed its response in opposition to Soto's motion for attorney's fees and costs at trial, arguing that the hours and rates claimed by Soto's counsel and the total costs claimed by Soto were excessive. Thereafter, the trial court entered judgment, awarding Soto the full amount of attorney's fees and costs requested.

Costco's arguments on appeal against the attorney's fees and costs awarded by the trial court parrot the same arguments presented to the trial court. "We find that the trial court was simply in the better position to apply the arguments and the law to the case at hand[,] and we presume it did just that. The trial court heard these arguments before ever making its ruling on attorney fees and we find no abuse of discretion in the court's ultimate conclusion." *Id.*

Soto also requested an award of pre-judgment interest at 3% in the amount of $11,250, post-judgment interest at 5% on the $250,000 judgment, and 9% on the award of attorney's fees and costs. Soto's motion was supported by a copy of his pre-judgment interest demand letter, accompanied by Soto's affidavit, sent by certified mail, return receipt requested to Costco pursuant to section 408.040. Soto demanded $119,000 to settle his claims, and left the offer open for ninety days. Costco responded that Soto's pre-judgment interest claim was excessive and should not be granted on any amounts awarded for his "unliquidated damages" claims of "garden-variety emotional distress and future damages." Costco argued that the trial court should not award

22

pre-judgment interest on any portion of Soto's jury award beyond the amount attributable to actual lost wages. The trial court found that Soto's pre-trial demand complied with section 408.040.3 and awarded him 3% interest on the verdict in the amount of $11,250.

Section 408.040.3 provides that "in tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party . . . and the amount of the judgment or order exceeds the demand for payment or offer of settlement, then prejudgment interest shall be awarded[.]" The statutory language is unambiguous: if a pre-trial demand for pre-judgment interest in a tort action complies with section 408.040.3, the trial court is required to award pre-judgment interest. "Section 408.040 pertains to pre-judgment interest in 'tort' claims, while [s]ection 408.020[5] pertains to 'written contracts'; accordingly, the statutory requirements are different depending on the statute implicated." *Bailey v. Hawthorn Bank*, 382 S.W.3d 84, 106 n.16 (Mo. App. W.D. 2012). Here, the underlying claim was a section 408.040 tort claim. Accordingly, Costco's argument is without merit.

Finally, Costco asserts that the trial court erred in awarding post-judgment interest on its award of attorney's fees at the rate of 9% allowed for non-tort actions in section 408.040.2 and should have been limited to the post-judgment interest rate allowed for tort actions in section 408.040.3. "We review the trial court's award of reasonable attorney's fees for an abuse of discretion." *Hill v. City of St. Louis*, 371 S.W.3d 66, 81 (Mo. App. E.D. 2012). Attorney's fees may be recovered by a party when allowed by statute. *Id.* Section 213.111.2 of the MHRA authorizes a trial court to "award court costs and reasonable attorney fees to the prevailing party." *See also Gilliland v. Mo. Athletic Club*, 273 S.W.3d 516, 523 (Mo. banc 2009).

---

[5] A "liquidated claim" is necessary for an award of pre-judgment interest under section 408.020. *McKinney v. State Farm Mut. Ins.*, 123 S.W.3d 242, 250 (Mo. App. W.D. 2003).

Costco contends that because an MHRA case is a tort action, the award of post-judgment interest on the award of attorney's fees is governed by section 408.040.3:

> [I]n tort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date judgment is entered by the trial court until full satisfaction. All such judgments and orders for money shall bear a per annum interest rate equal to the intended Federal Funds Rate, as established by the Federal Reserve Board, plus five percent, until full satisfaction is made.

We agree. *Bowolak v. Mercy East Communities*, 452 S.W.3d 688, 695 (Mo. App. E.D. 2014), is a disability discrimination case under the MHRA, in which the court of appeals affirmed the trial court's judgment that included post-judgment interest at the rate of 5% on the jury's verdict, and post-judgment interest at the rate of 9% on the judgment for attorney's fees. The court held that the prevailing employee was entitled to post-judgment interest on the award of damages in an MHRA case under the rate for tort judgments. *Id.* at 704. The issue of first impression before the court was the proper post-judgment interest rate for an MHRA claim. *Id.* The court reasoned that because the Missouri Supreme Court has treated discrimination actions as analogous to tort claims, the trial court did not err in awarding post-judgment interest at a 5% rate. *Id.*

Soto argues that the *Bowolak* court's affirmance justifies the application of section 408.040.2 to attorney's fee awards in MHRA cases.[6] However, the parties in *Bowolak* did not challenge, and the court did not address, the trial court's award of post-judgment interest on the attorney's fee award at the rate of 9%. Therefore, the ruling in *Bowolak* is not precedent on that issue.[7]

---

[6] Section 408.040.2 states, in pertinent part:

In all *nontort* actions, interest shall be allowed on all money due upon any judgment or order of any court from the date judgment is entered by the trial court until satisfaction be made by payment, accord or sale of property; all such judgments . . . shall bear nine percent per annum until satisfaction made as aforesaid.

[7] Soto also relies on *Pollock v. Wetterau Food Distribution Group*, 11 S.W.3d 754, 772 (Mo. App. E.D. 1999), in which the court addressed the issue of a disbarred attorney's entitlement to recover fees for work performed

24

In general, Missouri follows the American Rule, which requires that litigants bear their own attorney's fees unless otherwise authorized by statute. *Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. Its Members*, 364 S.W.3d 615, 630 (Mo. App. W.D. 2012). In this case, section 213.070 provides that retaliation "in any manner" is a prohibited unlawful discriminatory practice. Section 213.111 creates a civil right of action for an employee against an employer for unlawful discrimination, allowing an aggrieved employee to recover actual and punitive damages, court costs, and reasonable attorney fees. *See Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 160 (Mo. banc 2012). The statute "creates, defines, and regulates rights" and "affects a plaintiff's substantive right to recover interest on a judgment." *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 664 n.4 (Mo. banc 2014). It is unreasonable to apply a non-tort rate of interest on an award of attorney's fees and costs authorized by a statute for an action clearly sounding in tort.

Thus, we conclude that the trial court erred in awarding post-judgment interest on its award of attorney's fees at the rate of 9%. Accordingly, we modify the trial court's judgment of post-judgment interest on the award of attorney's fees and costs to a per annum interest rate equal to the intended Federal Funds Rate plus 5%, until full satisfaction is made. *See Miller-Stauch Constr. Co. v. Williams-Bungart Elec., Inc.*, 959 S.W.2d 490, 497 (Mo. App. W.D. 1998) ("In the interest of laying litigation to rest, Rule 84.14 permits the appellate court to give such judgment as the trial court ought to have given, if the record permits it.").

Point VII is granted in part and denied in part.

---

prior to his disbarment in an action brought under MHRA. Soto claims that the *Pollock* court's discussion of fees derived by the disbarred attorney and his client is contractual in nature. We disagree that *Pollock* stands for the proposition that the award of attorney's fees in an MHRA case is derived from the attorney's contract with his client; instead, the *Pollock* court clearly recognized that the award of such fees in an MHRA case are authorized by the MHRA statute (an action sounding in tort), not a contract between the discriminated-against employee and the employee's attorney. *Id.*

### Attorney's Fees on Appeal

Soto filed a motion for attorney's fees on appeal, which we took with the case. Section 213.111.2 authorizes a court to award "reasonable attorney fees to the prevailing party." "A prevailing party is one that succeeds on any significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit." *Hurst v. Kansas City, Mo. Sch. Dist.*, 437 S.W.3d 327, 344 (Mo. App. W.D. 2014) (internal quotation omitted). "Where a plaintiff has prevailed in an action under the MHRA, the court should award attorneys' fees unless special circumstances would render such an award unjust." *Id.* (internal quotation omitted). This includes fees incurred on appeal from the trial court's judgment. *Turner v. Kansas City Pub. Sch.*, 488 S.W.3d 719, 726 (Mo. App. W.D. 2016). Here, because we are affirming the judgment as modified in favor of Soto, Soto is the prevailing party. Therefore, his motion for costs and attorney's fees on appeal is granted. "Although appellate courts have authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Id.* (internal quotation omitted). Accordingly, we remand the cause to the trial court for the purpose of conducting a hearing to determine the reasonableness of the costs and fees requested, and to enter an appropriate award.

### Conclusion

The judgment of the trial court is affirmed as modified, and the cause is remanded to the trial court to enter the judgment dictated by our ruling today, including its determination of the appropriate amount of appellate attorney fees to be awarded to Soto's attorneys.

_____
Mark D. Pfeiffer, Chief Judge

James Edward Welsh and Alok Ahuja, Judges, concur.

26