

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| AARON M. MALIN,  )<br>  )<br>Respondent,  )<br>  )<br>v.  )<br>  )<br>  )<br>  )<br>COLE COUNTY PROSECUTING  )<br>ATTORNEY,  )<br>  )<br>Appellant.  ) | WD81583<br><br>**OPINION FILED:**<br>**January 15, 2019** |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Patricia S. Joyce, Judge**

**Before Division Two:** Alok Ahuja, Presiding Judge, and
Thomas H. Newton and Mark D. Pfeiffer, Judges

In this Sunshine Law request case, the Cole County Prosecuting Attorney's Office ("Prosecutor") appeals the judgment of the Circuit Court of Cole County, Missouri ("circuit court"), in favor of Mr. Aaron Malin ("Malin"), ordering the production of certain records the Prosecutor argues are not open to the public and imposing a $12,100 civil penalty against the Prosecutor that the Prosecutor argues is excessive. We affirm.

**Sunshine Law**

Missouri's Sunshine Law is contained in chapter 610 of the Missouri Revised Statutes and dictates that state public policy is "that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." § 610.011.1.[1]  The legislature has clearly expressed its intent that the Sunshine Law "shall be liberally construed and [its] exceptions strictly construed to promote this public policy."  *Id.* "Except as otherwise provided by law, . . . all public records of public governmental bodies shall be open to the public for inspection and copying as set forth in sections 610.023 to 610.026 . . . ." § 610.011.2.

Here, there is no dispute that the Prosecutor is a "public governmental body" as defined in section 610.010(4):  "any legislative, administrative or governmental entity created by the Constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order[.]"  There is also no question that records retained by the Prosecutor constitute "public records" as defined in section 610.010(6):  "any record, whether written or electronically stored, retained by or of any public governmental body[.]"  Section 610.022.5 provides that "[p]ublic records shall be presumed to be open unless otherwise exempt pursuant to the provisions of this chapter."

Section 610.023.3 requires:

> Each request for access to a public record shall be acted upon as soon as possible, but in no event later than the end of the third business day following the date the request is received by the custodian of records of a public governmental body.  If records are requested in a certain format, the public body shall provide the records in the requested format, if such format is available.  If access to the public record is not granted immediately, the custodian shall give a detailed explanation of the cause for further delay and the place and earliest time and date that the record will be available for inspection.  This period for document production may exceed three days for reasonable cause.

---

[1] All statutory references are to the REVISED STATUTES OF MISSOURI 2000, as supplemented.

In the event a public governmental body denies a request, a written statement of the grounds for such denial must be provided, which "shall cite the specific provision of law under which access is denied and shall be furnished to the requester no later than the end of the third business day following the date that the request for the statement is received."  § 610.023.4.  In the case of a public record containing both "material which is not exempt from disclosure as well as material which is exempt from disclosure, the public governmental body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying." § 610.024.1.

Where a public governmental body "knowingly" fails to comply with these mandatory steps, section 610.027.3 provides the possible consequences, stating:

> Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has knowingly violated sections 610.010 to 610.026, the public governmental body or the member shall be subject to a civil penalty in an amount up to one thousand dollars.  If the court finds that there is a knowing violation of sections 610.010 to 610.026, the court may order the payment by such body or member of all costs and reasonable attorney fees to any party successfully establishing a violation.  The court shall determine the amount of the penalty by taking into account the size of the jurisdiction, the seriousness of the offense, and whether the public governmental body or member of a public governmental body has violated sections 610.010 to 610.026 previously.

Where a public governmental body "purposely" refuses to comport with the requirements of the Sunshine Law, section 610.027.4 provides the consequences, stating:

> Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has purposely violated sections 610.010 to 610.026, the public governmental body or the member shall be subject to a civil penalty in an amount up to five thousand dollars.  If the court finds that there was a purposeful violation of sections 610.010 to 610.026, then the court shall order the payment by such body or member of all costs and reasonable attorney fees to any party successfully establishing such a violation.  The court shall determine the amount of the penalty by taking into account the size of the jurisdiction, the seriousness of the offense, and whether the public

3

governmental body or member of a public governmental body has violated sections 610.010 to 610.026 previously.

## Factual and Procedural Background

On three separate occasions from April 2015 through October 2015, Malin requested from the Prosecutor: (1) correspondence between the Prosecutor and a drug task force; (2) indictments by the Prosecutor relating to narcotic sales in public housing from July 2014 to the present; and, (3) Sunshine Law requests to the Prosecutor and any responses thereto from January 2015 to the present. Each Sunshine Law request mirrored the Sunshine Law and stated that the records were to be provided without redactions or with only redactions permitted by law, and that if any part of the request was denied, that the *specific* exceptions relied upon for each denial be listed. On each occasion, the Prosecutor responded with *general* objections to the records requests, sometimes untimely, and indicated that the request was too burdensome and the task of searching for any responsive documents simply would not be performed; further, the Prosecutor stated his conclusions "without confirming or denying the existence of records you requested."

Subsequently, Malin hired an attorney, and the attorney wrote to the Prosecutor and explained the untimely and statutorily deficient form of the Prosecutor's Sunshine Law responses; the Prosecutor ignored the letters from Malin's attorney. Malin's attorney then filed the instant Sunshine Law suit, and only then, after many months of protracted litigation, did the Prosecutor provide *partial* responses to *some* of the requests, again refusing to note the identification of other records responsive to the Sunshine Law requests and failing to provide specific statutory reasons for refusing to search for or disclose such records.

Malin filed a motion for summary judgment seeking production of all records responsive to the Sunshine Law requests and further seeking civil penalties against the Prosecutor for the

4

blatant disregard of the requirements of Missouri's Sunshine Law. The motion was ruled in favor of Malin. In its judgment, the circuit court noted with disdain that the Prosecutor's admitted position was that the Prosecutor "would not even conduct a search for responsive documents because, as he asserted, every record retained by his office was exempted from disclosure under the Sunshine Law." The circuit court's judgment found the Prosecutor's conduct to be undisputedly purposeful, knowing, dilatory, and non-responsive to the requirements of Missouri's Sunshine Law. Specifically, the circuit court's judgment decreed:

1.  Defendant knowingly and purposely violated the Sunshine Law.

2.  Defendant must search for and produce all open records responsive to Plaintiff's requests, which includes the following:

    a) any correspondence or communication between the Office of the Prosecuting Attorney of Cole County (or its associates/employees) and the MUSTANG drug task force (or its associates/employees);

    b) any indictments handed down in Cole County between July 1, 2014 and the present, limited to indictments for selling narcotics in public housing; and

    c) any Sunshine Law (or open records) requests received by the Cole County Prosecutor's Office, as well as any responses provided, between January 1, 2015 and the present.

3.  Defendant is ordered to pay a $12,100 civil penalty to Plaintiff.

4.  Defendant is further ordered to pay Plaintiff's costs and reasonable attorneys' fees in the amount of $24,070.00. . . .

On appeal, the Prosecutor does *not* challenge that he knowingly and purposely violated the Sunshine Law[2] as to the second and third categories of records ordered to be produced; the Prosecutor does *not* challenge the award of costs and reasonable attorney's fees in the amount of

---

[2] In his reply brief, the Prosecutor states, "Appellant Prosecutor has clearly failed to scrupulously follow the Sunshine Law, a reality that Appellant Prosecutor has candidly conceded in the opening brief." Of note, the Prosecutor at the time of the 2015 Sunshine Law requests (no longer the Prosecutor as of January 1, 2019) had practiced law since 1984, had served as a municipal judge for over seven years in his career, and had even *taught* state agency officials about their responsibilities regarding the Sunshine Law and responding to requests for public records. Hence, we agree with the circuit court *and* the Prosecutor that there is no excuse for the purposeful and knowing violations of the Sunshine Law in the present case.

$24,070; the Prosecutor does *not* challenge the award of a section 610.027 civil penalty. Instead, on appeal, the Prosecutor *only* challenges the judgment's order of the production of certain records responsive to the first category of records requested (drug task force communications) and *only* challenges the *amount* of the civil penalty awarded to Malin.

### Standard of Review

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Because the circuit court's judgment is based on the record submitted and the law, we need not defer to the circuit court's order granting summary judgment." *Reverse Mortg. Sols., Inc. v. Estate of Hunter*, 479 S.W.3d 662, 666 (Mo. App. W.D. 2015). We review the grant of a summary judgment *de novo* because whether it was properly granted is purely an issue of law. *Id.*

### I.

In Point I, the Prosecutor does not dispute that his conduct constituted a knowing, purposeful violation of the Sunshine Law; rather, the Prosecutor's argument on appeal is confined to whether the circuit court's summary judgment was erroneous because:

> law enforcement record exemptions designed to protect public safety in the Sunshine Law at §610.100, RSMo. . . . apply to the communications between the Appellant Prosecutor and [MUSTANG drug task force and its employees and associates] because . . . the public disclosure of information contained in the requested records has the potential to endanger the personal safety of officers and undermine the effectiveness of their investigations.

The Prosecutor's argument reflects a misunderstanding of the circuit court's judgment. The judgment has not prevented the Prosecutor from withholding records that are *not open* records.

The circuit court ordered the Prosecutor to "search for and produce all **open** records responsive to Plaintiff's requests, which includes the following: a) any correspondence or

6

communication between the Office of the Prosecuting Attorney of Cole County (or its associates/employees) and the MUSTANG drug task force (or its associates/employees)[.]" (Emphasis added.)  A careful reading of this ruling demonstrates that, if a thorough search for responsive records and analysis of those records reveals that any portion of them contains information "that is reasonably likely to pose a clear and present danger to the safety of any victim, witness, undercover officer, or other person; or jeopardize a criminal investigation," which is thus entitled to protection from disclosure pursuant to section 610.100.3, the judgment *does not* mandate their disclosure.  The judgment specifies that only "***open* records**" responsive to the requests must be produced.  The circuit court would not have specified "open" records in its ruling if it was not contemplating "closure" of access to certain records that are specified in the Sunshine Law.

That said, if the Prosecutor finds records responsive to the drug task force communication request that the Prosecutor believes are not "open" due to the fact that such record or records contain any information exempt from disclosure by law, the Prosecutor must "provide . . . a written statement of the grounds for [redacting that portion of the record or refusing to provide the record].  Such statement shall cite the *specific* provision of law under which access is denied[.]"  § 610.023.4 (emphasis added).  *See also* § 610.024.1.  In other words, it is implicit in the language of the judgment that the Prosecutor must search for and identify *all* records responsive to the Sunshine Law request, and *if* the Prosecutor believes that certain responsive records are not *open* for a *specific* statutory reason, then the Prosecutor must produce an objection log to Malin at which point Malin would have the opportunity to seek a ruling from the circuit court compelling production of the records after in camera inspection of any disputed records.  "'[C]ourts have inherent power to enforce their own judgments and should see to it that

7

such judgments are enforced when they are called upon to do so.'" *McLean v. First Horizon Home Loan Corp.*, 277 S.W.3d 872, 876 (Mo. App. W.D. 2009) (quoting *SD Invs., Inc. v. Michael-Paul, L.L.C.*, 157 S.W.3d 782, 786 (Mo. App. W.D. 2005)).

Point I is denied.

## II.

In Point II, the Prosecutor argues that the circuit court's judgment assessing a $12,100 penalty against the Prosecutor violated the $5,000 limit placed on such penalties by section 610.027. He urges that he is entitled to the benefit of a strict construction of section 610.027 and application of the rule of lenity, which he asserts precludes the imposition of multiple penalties that cumulatively exceed $5,000.

This argument was not presented to the circuit court, and thus it is not preserved for our review on appeal. Malin's motion for summary judgment requested that the circuit court impose a civil penalty against the Prosecutor for the Prosecutor's multiple purposeful and knowing violations of Missouri's Sunshine Law. Malin's motion argued that there were multiple distinct violations of the law and requested penalty amounts for each violation, and specifically requested a total penalty of $12,100. In response, the Prosecutor made no argument regarding the propriety of multiple penalties for multiple violations under the Sunshine Law; rather, his argument was that no monetary penalty should be applied because Malin filed the lawsuit against the Prosecutor in his "official capacity," rather than in his individual capacity, and thus "fail[ed] to state actionable claims for monetary relief." "'An appellant's failure to preserve an issue at the trial court waives the issue, and it is not reviewable on appeal.'" *Kerr v. Mo. Veterans Comm'n*, 537 S.W.3d 865, 880 (Mo. App. W.D. 2017) (quoting *Ryan v. Maddox*, 112 S.W.3d 476, 479

(Mo. App. W.D. 2003)). The Prosecutor has not sought plain error review, nor would we be inclined to grant it if it had been requested.[3]

Point II is denied.

**Conclusion**

The trial court's judgment is affirmed, and the Prosecutor must comply with the judgment in a manner consistent with our ruling today.[4]

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Judge

Alok Ahuja, Presiding Judge, and Thomas H. Newton, Judge, concur.

---

[3] *Ex gratia*, we note that the Sunshine Law provides that: "Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has purposely violated sections 610.010 to 610.026, the public governmental body or the member shall be subject to a civil penalty in an amount up to five thousand dollars." § 610.027.4. The plain language of the statute connects the penalty of up to five thousand dollars to the finding of a single purposeful violation of the Sunshine Law. Here, the circuit court made findings that the Prosecutor committed multiple, distinct violations of the Sunshine Law, outright refusing to search, adequately respond to, or fulfill in any manner at least three separate Sunshine Law requests from Malin. Thus, even had the Prosecutor adequately preserved the issue for our review, it would fail on the merits.

[4] Malin filed a motion for attorney fees on appeal which we took with the case. "In general, Missouri follows the American Rule, which requires that litigants bear their own attorney's fees unless otherwise authorized by statute." *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 58 (Mo. App. W.D. 2016). However, "[a]ttorney's fees may be recovered by a party when allowed by statute." *Id.* at 57. Section 610.027.4 authorizes a court to award, "all costs and reasonable attorney fees to any party successfully establishing" a purposeful violation of the Sunshine Law. Because we are affirming the judgment in favor of Malin ruling that the Prosecutor committed multiple purposeful violations of the Sunshine Law, Malin's motion for costs and attorney fees on appeal is granted. "Although appellate courts have authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Turner v. Kansas City Pub. Sch.*, 488 S.W.3d 719, 726 (Mo. App. W.D. 2016) (internal quotation marks omitted). Accordingly, we remand to the trial court to determine the reasonableness of Malin's attorney fees on appeal and enter an appropriate award.