

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

AARON M. MALIN, )
                               )
         Appellant, )
                               )
v. )         WD85703
                               )
COLE COUNTY PROSECUTING )         Opinion filed:  September 19, 2023
ATTORNEY, )
                               )
         Respondent. )

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**
**THE HONORABLE DANIEL R. GREEN, JUDGE**

Division One:  Mark D. Pfeiffer, Presiding Judge,
Alok Ahuja, Judge and W. Douglas Thomson, Judge

Aaron M. Malin ("Malin") appeals the judgment of the Circuit Court of Cole County ("trial court") denying his motion to enforce a previous judgment entered against the Cole County Prosecuting Attorney ("the Prosecutor") for multiple violations of the Sunshine Law.  Malin raises three points on appeal, asserting the trial court erred in (1) "holding that the [Prosecutor]'s search for responsive records was sufficient under the Sunshine Law because the proper legal question was whether the search was sufficient under the wording of the Original

Judgment," (2) holding it was required to deny the motion on principles of collateral estoppel, law of the case, and the public policy of finality, and (3) denying the motion "on the basis that the [Prosecutor]'s offer to search for records at Malin's cost complies with the Sunshine Law . . . ."  We reverse and remand.

### Factual and Procedural History[1]

The case before us is the latest in a series of litigation between Malin and the Prosecutor concerning a Sunshine Law dispute that began in 2015.  We have twice issued opinions on questions pertaining to this litigation in *Malin v. Cole Cty. Prosecuting Att'y*, 565 S.W.3d 748 (Mo. App. W.D. 2019) ("*Malin I*") and *Malin v. Cole Cty. Prosecuting Att'y*, 631 S.W.3d 638 (Mo. App. W.D. 2021) ("*Malin II*").[2]

In 2015, Malin made three separate records requests to the Prosecutor.  In each request, Malin asked the Prosecutor to advise whether the Prosecutor would condition the search for or copying of records by the payment of fees, and if so, the amount of the fees.  The Prosecutor responded to the requests, sometimes untimely, with general objections.  The Prosecutor also indicated that the requests were too burdensome and that any searching for responsive documents

---

[1] "'On appeal from a court-tried matter, we view the facts in the light most favorable to the court's judgment.'"  *Estes v. Cole Cty.*, 437 S.W.3d 307, 309 n.1 (Mo. App. W.D. 2014) (quoting *Short v. S. Union Co.*, 372 S.W.3d 520, 524 n.2 (Mo. App. W.D. 2012)).

[2] We borrow from the factual summaries in *Malin I* and *Malin II* with no further citation.

would simply not be performed, all while declining to confirm or deny the existence of the requested records.  The Prosecutor never advised Malin that the search for or copying of records would be conditioned on the payment of fees as permitted by § 610.026.[3]  Malin subsequently filed a petition alleging that the Prosecutor had committed Sunshine Law violations.  The Prosecutor answered Malin's petition by denying the allegations of Sunshine Law violations.  The Prosecutor did not allege that its obligation to respond to Malin's Sunshine Law requests were subject to the condition that Malin pay costs and fees for searching for and copying records.  Malin moved for summary judgment, and the trial judge, The Honorable Patricia Joyce, ruled in his favor.  Judge Joyce's judgment ("Original Judgment") decreed:

> 1. Defendant knowingly and purposely violated the Sunshine Law.
>
> 2. Defendant must search for and produce all open records responsive to Plaintiff's requests, which includes the following:
>
>> a) any correspondence or communication between the Office of the Prosecuting Attorney of Cole County (or its associates/employees) and the MUSTANG drug task force (or its associates/employees);
>>
>> b) any indictments handed down in Cole County between July 1, 2014 and the present, limited to indictments for selling narcotics in public housing; and
>>
>> c) any Sunshine Law (or open records) requests received by the Cole County Prosecutor's Office, as well as any responses provided, between January 1, 2015 and the present.
>
> 3. Defendant is ordered to pay a $12,100 civil penalty to Plaintiff.

---

[3] All statutory citations are to RSMo (2000), as supplemented, unless otherwise stated.

4. Defendant is further ordered to pay Plaintiff's costs and reasonable attorneys' fees in the amount of $24,070.00. This judgment is final for purposes of appeal.

The Original Judgment thus declared that a Sunshine Law violation had occurred and ordered the Prosecutor to search for and produce all open records requested by Malin. The Original Judgment did not condition this unambiguous directive on the payment by Malin of costs and fees associated with searching for or producing the open records.

The Prosecutor appealed the Original Judgment, and our court affirmed in *Malin I*. In March of 2019, the Prosecutor paid the monetary part of the Original Judgment and directed personnel to begin searching for responsive records. This led to the production of a number of records to Malin. The production of some, but not all, open records responsive to Malin's request was not conditioned on the payment of any costs or fees associated with searching for or producing the open records, consistent with the terms of the Original Judgment.

However, Malin was dissatisfied with the Prosecutor's efforts concerning the production of records, and consequently filed a Motion for Civil Contempt on June 12, 2019, "alleging in general that [the Prosecutor] was in contempt for failing to produce records as required in [the Original Judgment]." After the filing of this motion, the Prosecutor provided a number of other documents to Malin, and also indicated at that time that additional documents might be discovered through a forensic review of the office's IT systems. The Prosecutor offered to discuss the cost for undertaking such a search.

On June 30, 2019, the Prosecutor filed a response to Malin's Motion for Civil Contempt, including therein a "Motion for Entry of Satisfaction of Judgment," which requested that the court "enter satisfaction of judgment or [sic] record for the Court's judgment on civil penalties and attorney's fees." On July 1, 2019, Malin filed a "Partial Satisfaction of Judgment," in which he acknowledged that the Prosecutor had paid in full the civil penalties and the attorneys' fees that had accrued at the time our court issued the opinion affirming the Original Judgment. The "Partial Satisfaction of Judgment" also acknowledged that the Prosecutor had fulfilled the Original Judgment's requirements with respect to Malin's second and third records request, but contended the Prosecutor had not fulfilled the Original Judgment's requirement that the Prosecutor "search for and produce all open records" responsive to Malin's first request, which included "any correspondence or communication between the Office of the Prosecuting Attorney of Cole County (or its associates/employees) and the MUSTANG drug task force (or its associates/employees)[.]"

Following a hearing on the Motion for Civil Contempt, Judge Joyce issued her judgment denying the motion ("Contempt Judgment"). In finding no contemptuous behavior on the part of the Prosecutor, Judge Joyce focused on the Prosecutor's efforts to comply with the Original Judgment, stating,

> The Court concludes that Malin failed to meet his burden of proof to show that [the Prosecutor] failed to abide by the Court's [Original Judgment]. [The Prosecutor] made a good faith search for records

5

responsive to Malin's Sunshine Law requests, produced records to the extent he could locate them, and offered a forensic search for additional records by an outside information technology firm if Malin wanted to pay for that. Moreover, [the Prosecutor] paid Malin's money judgment promptly and in full, showing good faith from the outset. As an additional and alternative basis for overruling Malin's motion, the Court finds that [the Prosecutor] has met his burden to show that he did not act in intentional contempt for the Court or its orders.

Malin appealed the Contempt Judgment, which our court affirmed in *Malin II*. There, we found that "[t]he [Contempt] Judgment does not amend the [Original] Judgment,[] does not declare the [Original] Judgment fully satisfied, and does not prohibit further efforts by Malin to seek to enforce it. Rather, it merely disposed of the only issue then pending before it – Malin's Motion for Contempt." 631 S.W.3d at 645 (footnote omitted). We emphasized that "[t]he trial court, in fact, lacked authority in the instant action to amend the [Original] Judgment. Once a judgment becomes final, the trial court loses jurisdiction to entertain further motions to change, alter, or modify the final judgment." *Id.* at 645 n.2 (citations omitted). We also clarified that Judge Joyce's finding "that Malin failed to carry his burden of proof of demonstrating a violation of the court's orders" was confined to the denial of his Motion for Civil Contempt. *Id.* at 645 n.3. We further stated,

> We express no opinion on what impact that finding would have in any future action taken by Malin to seek enforcement of the [Original] Judgment, or what impact it would have in any future action taken by the Prosecutor to seek a declaration that the [Original] Judgment has been fully satisfied.

*Id.*

6

Prior to Malin's appeal of the Contempt Judgment, he had filed a Motion to Enforce Judgment, the motion at issue on this appeal. The motion sought enforcement of the Original Judgment, asserting "[t]he Prosecutor has failed to comply with the [Original Judgment] because it has not searched all records the Prosecutor retains for records responsive to the First Request."[4] Malin's prayer for relief requested the trial court to therefore enter an order:

A. Finding that the Prosecutor has not complied with the [Original Judgment];

B. Ordering the Prosecutor within thirty (30) days of the Court's Order to:

1) Obtain from the MUSTANG drug task force a list of officers who have served on that task force and the dates on which they served;

2) Conduct a search of each computer used by the Prosecutor's office for correspondence or communication between the Prosecutor's office and any of the officers known to have been assigned to the MUSTANG drug task force;

3) Conduct a search of each server used by the Prosecutor's office for correspondence or communication between the Prosecutor's office and any of the officers known to have been assigned to the MUSTANG drug task force;

4) Conduct a search of all microfilm retained by the Prosecutor's office for correspondence or communication between the Prosecutor's office and any of the officers known to have been assigned to the MUSTANG drug task force;

5) Conduct a search of all paper files retained by the Prosecutor's office for correspondence or communication between the

---

[4] On January 4, 2020, Malin made a new, fourteen-point records request to the Prosecutor for other MUSTANG-related information. The Prosecutor initiated an electronic word search after Malin's attorney sent a deposit to cover the costs. This new Sunshine Law request, standing on its own, is not at issue in this appeal, but is the reason we address the 2015 request as the *First* Request.

Prosecutor's office and any of the officers known to have been assigned to the MUSTANG drug task force;

6) Produce to Malin all records responsive to the First Request resulting from these searches; and

7) Produce to Malin a list identifying when each of the above searches took place, who conducted each search, and what search terms were used in conducting the search;

C. Prohibiting the Prosecutor from charging Malin any fees or costs associated with complying with the [Original Judgment]; and

D. Ordering the Prosecutor to pay Malin's reasonable attorney fees accrued since January 15, 2019, in his effort to enforce the [Original Judgment].

After we issued our mandate in *Malin II*, hearings on Malin's Motion to Enforce Judgment were held, including an evidentiary hearing on May 4, 2022 at the request of the Prosecutor. The sole testifying witness at this hearing was the current Cole County Prosecuting Attorney.[5] He testified that he had been advised by IT personnel that any further searching for electronic communications would have to be done by an outside firm. Additionally, he estimated his office has approximately 6,000 to 8,000 criminal files still on paper and an unknown number of records on microfilm or microfiche, but admitted his office had not searched any paper files or microfilms for records responsive to Malin's First Request. However, he indicated a search of paper or electronic files would be done if Malin paid for that search in advance.

---

[5] In 2018, prior to the Contempt Judgment being entered, Cole County voters elected a new prosecuting attorney.

On June 22, 2022, the trial court entered its Final Judgment and Order ("Current Judgment") denying Malin's Motion to Enforce Judgment. The trial court gave three alternative bases for its order denying the motion:

> 1. Judge Joyce's [Contempt Judgment] ruled on the sufficiency of [the Prosecutor's] efforts to locate and produce records which the [Original Judgment] ordered the Cole County Prosecutor to produce, stating:
>
> > [The Prosecutor] made a good faith search for records responsive to Malin's Sunshine Law requests, produced records to the extent he could locate them, and offered a forensic search for additional electronic records by an outside information technology firm if Malin wanted to pay for that.
>
> [] Judge Joyce did not grant Malin's request to compel [the Prosecutor] to search further for records Malin sought. Malin either raised or could have raised that issue on appeal in *Malin* [*II*]. The Court of Appeals affirmed Judge Joyce's [Contempt Judgment] denying civil contempt in *Malin* [*II*]. Principles of collateral estoppel, law of the case, and the public policy of finality require the Court to give force to Judge Joyce's rulings and her findings of fact on disputed issues in her [Contempt Judgment.]
>
> 2. [T]he Court finds that [the Prosecutor's] search for responsive records was sufficient under the Sunshine Law. There was no evidence that a more expansive search was likely to identify additional responsive records.
>
> 3. [T]he Court finds that [the Prosecutor's] offer to engage in a more expansive search for records at Malin's cost complies with the Sunshine Law. The cost-shifting provisions within Sections 610.023-026, RSMo., indicate that the General Assembly intended to shift the cost of a record search under the Sunshine Law to the requesting party, Malin, here. Judge Joyce's intervening order enforcing the search requirement does not negate the separate requirement that the requesting party must still pay for the search. Neither the Sunshine Law nor Judge Joyce's [Original Judgment] suggests otherwise.

In so finding, the trial court also stated, "Nothing within this judgment is intended to place limits or conditions on Malin's right to make future requests for records from the Cole County Prosecutor, nor is this judgment intended to pass

9

on the obligations which the Cole County Prosecutor would have in responding." As an additional part of the Current Judgment, the trial court also ordered that: (1) the current Prosecutor had satisfied the Original Judgment requiring his predecessor to search for and produce records, (2) its ruling disposed of all remaining claims and issues, and (3) costs were to be taxed to Malin.

Malin subsequently filed his Second Motion to Vacate or Amend Judgment, which was denied by the trial court. He now appeals. Additional facts will be provided below, as necessary. For purposes of convenience, we address Points I and III together.

## Standard of Review

"[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "[*D*]*e novo* review of questions of law is applied. 'With respect to such questions, "the appellate court reviews the trial court's determination independently, without deference to that court's conclusions."'" *Medlin v. RLC, Inc.*, 467 S.W.3d 865, 867 (Mo. App. S.D. 2015) (internal citation omitted) (quoting and citing *Pearson v. Koster*, 367 S.W.3d 36, 43-44 (Mo. banc 2012)).

## Point III and Point I[6]

In his third point on appeal, Malin claims that "[t]he trial court erred in denying [his] motion to enforce judgment on the basis that the [Prosecutor]'s offer to search for records at Malin's cost complies with the Sunshine Law . . . ." Specifically, he contends,

> [T]he Sunshine Law's provisions allowing public governmental bodies to charge fees for researching public records requests are not at issue in this case in that the Original Judgment did not condition its command for the [Prosecutor] to search for and produce all records responsive to Malin's requests on Malin's willingness or ability to pay for the search and the [Prosecutor] failed to raise this issue when it appealed the Original Judgment.[7]

---

[6] The Prosecutor contends this appeal is moot because Malin has failed to assert error in the trial court's separate order that the Original Judgment has been satisfied. The Prosecutor asserts, "There is no longer an outstanding and unsatisfied judgment ordering the Prosecutor to take action. Thus, any action by this Court to grant any of the points relied on which Malin did assert would only result in a remand to enforce a non-existing judgment." We disagree.

> In terms of justiciability, "'[a] cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy.'" *Shelton v. Farr*, 996 S.W.2d 541, 543 (Mo. App. 1999) ([citation omitted]). "'The existence of an actual and vital controversy susceptible of some relief is essential to appellate jurisdiction.'" *Armstrong* [*v. Elmore*], 990 S.W.2d [62,] 64 [(Mo. App. 1999)] ([citation omitted]). "When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed." *Id.*; *In re C.A.D.*, 995 S.W.2d 21, 28 (Mo. App. 1999). "'Even a case vital at inception of the appeal may be mooted by an intervenient [sic] event which so alters the position of the parties that any judgment rendered [merely becomes] a hypothetical opinion.'" *Armstrong*, 990 S.W.2d at 64 ([citation omitted]).

*State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001) (first and eighth alterations in original). This appeal is not moot, because if we determine through our analysis of Malin's points that the Motion to Enforce Judgment should not have been denied, this would necessarily mean the Original Judgment has *not* been satisfied up to this point. Accordingly, a remand to enforce the Original Judgment would certainly have a practical effect upon the existing controversy and would not merely be a hypothetical opinion.

[7] We note that Malin's point has failed to articulate which *Murphy* ground he

11

We agree that the Original Judgment does not condition the Prosecutor's obligation to search for and produce open records responsive to Malin's Sunshine Law requests on Malin's payment of fees or costs associated with that search, and that it was thus erroneous for the trial court to effectively modify the Original Judgment by imposing that condition.

""""[C]ourts have inherent power to enforce their own judgments and should see to it that such judgments are enforced when they are called upon to do so."""" *Chasnoff v. Mokwa*, 415 S.W.3d 152, 158 (Mo. App. E.D. 2013) (alteration in original) (quoting *Schumacher v. Austin*, 400 S.W.3d 364, 369 (Mo. App. W.D. 2013)) (other citation omitted). "'The trial court's inherent enforcement power applies to the judgment as originally rendered; the trial court's power to modify a judgment ceases when the judgment becomes final.'" *Schumacher*, 400 S.W.3d

---

relies on in arguing for reversal. While he correctly states our review is governed by the standard in *Murphy*, nowhere within his point relied on or argument does he claim the trial court's holding had no substantial evidence to support it, was against the weight of the evidence, or erroneously declared or applied the law. "We can reverse a judgment 'only on a *Murphy* ground.'" *Interest of S.M.W.*, 658 S.W.3d 202, 212 (Mo. App. W.D. 2022) (quoting *Smith v. Great Am. Assur. Co.*, 436 S.W.3d 700, 704 (Mo. App. S.D. 2014)). "'If a point on appeal fails to identify which one of the *Murphy v. Carron* grounds applies, Rule 84.04 directs us to dismiss the point.'" *Id.* (quoting *Ebert v. Ebert*, 627 S.W.3d 571, 580 (Mo. App. E.D. 2021)) (citing Rule 84.04(d)(1)).

Nevertheless, "[w]e do have discretion to review non-compliant briefs *ex gratia* when the argument is 'readily understandable.'" *Id.* at 212-13 (quoting *Ebert*, 627 S.W.3d at 585) (other citation omitted). This is particularly preferable where a single *Murphy* ground can be discerned from the point, even where that ground conflicts with the grounds stated in the point relied on. *See e.g., Rand Constr. Co. v. Caravan Ingredients, Inc.*, 662 S.W.3d 44, 50 n.5 (Mo. App. W.D. 2022). We choose to exercise that discretion here, where we can discern from Malin's argument that he is claiming the trial court misinterpreted or misapplied the Original Judgment.

at 370 (quoting *SD Invs., Inc. v. Michael-Paul, L.L.C.*, 157 S.W.3d 782, 786 (Mo. App. W.D. 2005)).

The construction of a judgment is a question of law. *Medlin*, 467 S.W.3d at 868. "'The general rules of construction for written instruments are used to construe judgments.' '[W]hen the language of the judgment is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used.'" *Schumacher*, 400 S.W.3d at 370 (alteration in original) (internal citations omitted) (quoting *Gaunt v. State Farm Mut. Auto. Ins. Co.*, 24 S.W.3d 130, 138 (Mo. App. W.D. 2000)). In such circumstances, "we do not look outside the four [corners] of the judgment for its interpretation." *Medlin*, 467 S.W.3d at 868 (quoting *Medlin v. RLC, Inc.*, 423 S.W.3d 276, 285 (Mo. App. S.D. 2014)).

Resolution of this point partially involves a question of statutory interpretation, which is reviewed *de novo*. *Gross v. Parson*, 624 S.W.3d 877, 884 (Mo. banc 2021) (citation omitted). "'The primary goal of statutory interpretation is to give effect to legislative intent, which is most clearly evidenced by the plain text of the statute.'" *Id.* (quoting *State ex rel. Goldsworthy v. Kanatzar*, 543 S.W.3d 582, 585 (Mo. banc 2018)).

Section 610.026.1(1) authorizes public governmental bodies to charge a public records requester for research and search time:

> Research time required for fulfilling records requests may be charged at the actual cost of research time. Based on the scope of the request, the public governmental body shall produce the copies using employees of the

body that result in the lowest amount of charges for search, research, and duplication time.

*Id.*

The trial court properly explained the purpose of this right when it stated "the General Assembly considered the cost which requests for access to public records could impose on agencies of state and local government, and provided for shifting that cost to the party seeking access." However, the plain text of § 610.026.1(1) does not support the trial court's characterization of this right as a "requirement"; rather, the language clearly denotes it as a permissive statutory right.[8] And, as with other statutory rights, this right of the Prosecutor to request costs before complying with a Sunshine Law request can be waived. *See e.g.*, *Boone Cty. By and Through Butcher v. Blue Cross Hosp. Serv., Inc. of Mo.*, 526 S.W.2d 853, 859 (Mo. App. 1975) ("The statutory discretionary right clearly may be waived[.]") (citation omitted); *Coffer v. Wasson-Hunt*, 281 S.W.3d 308, 312 (Mo. banc 2009) (police officer waived statutory right to a hearing before the Kansas City Board of Police Commissioners). In fact, we find that such a waiver by the Prosecutor has occurred here. That waiver occurred, at a minimum, when the Prosecutor failed to assert in its answer to Malin's original lawsuit seeking to

---

[8] Specifically, the Current Judgment denying Malin's Motion to Enforce Judgment stated, in part: "Judge Joyce's intervening order enforcing the search requirement does not negate the separate *requirement* that the requesting party must still pay for the search." (Emphasis added). Not only does § 610.026.1(1) state that research time "may" be charged, but it also provides that "[d]ocuments may be furnished *without* charge or at a reduced charge when the public governmental body determines that waiver or reduction of the fee is in the public interest . . . ." *Id.* (emphasis added).

14

enforce his Sunshine Law requests that the obligation to search for and produce open records responsive to the requests was subject to the permissive right to condition the search for and copying of responsive records to Malin's payment of associated fees and costs.[9]

Instructive for our purposes is the law surrounding conditions precedent and affirmative defenses. "A condition precedent is an act or event that must exist or occur before a duty to perform arises." *In re Marriage of Busch*, 310 S.W.3d 253, 265 (Mo. App. E.D. 2010) (citation omitted). Noncompliance with a condition precedent is an affirmative defense that a party must plead. *See e.g., Nichols v. Preferred Risk Group*, 44 S.W.3d 886, 896 (Mo. App. S.D. 2001) (holding that the insured's noncompliance with conditions precedent to recover under an insurance policy must be pled and proven by the insurer as an affirmative defense); *Pannell v. Mo. Ins. Guar. Ass'n*, 595 S.W.2d 339, 347 (Mo. App. W.D. 1980); Rule 55.08 ("In pleading to a preceding pleading, a party shall

---

[9] Arguably, the Prosecutor's permissive right was waived when he failed in response to Malin's three Sunshine Law requests to advise that any search for or copying of open records would be subject to Malin's payment of fees and costs authorized by § 610.026, particularly as Malin's Sunshine Law requests expressly sought this information. However, we need not decide whether a public governmental entity's failure to impose the permissive condition authorized by § 610.026 at the first opportunity (the written response to a Sunshine Law request) waives the right to later assert that condition. Here, there is no question that the Prosecutor waived the permissive right to condition its search for and copying of open records on Malin's payment of fees and costs by failing to assert that condition as an affirmative defense to Malin's initial lawsuit seeking to enforce the Sunshine Law. By the time the trial court entered its judgment in the instant case, the determination of rights under the Sunshine Law was no longer the issue, and instead the only matter to be determined was enforcement of the Original Judgment.

set forth all applicable affirmative defenses . . . .").[10] "'Failure to plead an affirmative defense results in waiver of that defense[,]'" thereby barring a party from raising arguments concerning it on appeal. *AllStar Capital, Inc. v. Wade*, 352 S.W.3d 633, 640 (Mo. App. E.D. 2011) (quoting *Lake Wauwanoka, Inc. v. Anton*, 277 S.W.3d 298, 300 (Mo. App. E.D. 2009)).

> Bearing resemblance to these concepts is the law of the case doctrine:

> The doctrine of law of the case provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal. The doctrine governs successive adjudications involving the same issues and facts. Generally, the decision of a court is the law of the case for all points presented and decided, *as well as for matters that arose prior to the first adjudication and might have been raised but were not.*

*Walton v. City of Berkeley*, 223 S.W.3d 126, 128-29 (Mo. banc 2007) (emphasis added) (internal citations omitted) (quoting *State ex rel. Alma Tel. Co. v. Pub. Serv. Comm'n*, 40 S.W.3d 381, 388 (Mo. App. 2001)) (other citation omitted).

Applying these principles to the present case, it becomes apparent the Prosecutor has waived all arguments concerning its permissive statutory right to charge costs. Not only did the Prosecutor fail to assert this permissive right in its responses to Malin's Sunshine Law requests,[11] the Prosecutor also failed to raise the permissive statutory right to require Malin to pay costs and fees as a condition precedent to any obligation to search for and produce open records as

---

[10] All rule references are to Missouri Supreme Court Rules.
[11] *See supra* note 9.

an affirmative defense in its answer to Malin's original 2015 petition.[12]  As a result, and not at all surprisingly, the Original Judgment did not condition the Prosecutor's determined obligation to search for and produce open records responsive to Malin's Sunshine Law requests on Malin's payment of fees and costs permissively authorized by § 610.026.  The Prosecutor's current argument that its obligation to comply with the Original Judgment first "require[ed] payment from Malin to undertake a broader search for records" is unsupported by the language of the Original Judgment.  Indeed, there is no question concerning the finality of the Original Judgment, and the trial court's

---

[12] We unambiguously held in *Malin II*: "The [Contempt] Judgment does not amend the [Original] Judgment,[] does not declare the [Original] Judgment fully satisfied, and does not prohibit further efforts by Malin to seek to enforce it.  Rather, it merely disposed of the only issue then pending before it – Malin's Motion for Contempt."  631 S.W.3d at 645.  The importance of this clear holding is that Malin was, in fact, arguing in the appeal from the civil contempt proceeding that the trial court's contempt judgment erroneously entered a "new judgment."  We ruled that "issue," however inartfully it was briefed by Malin.  We said plainly that no new judgment was, or could have been, issued in the civil contempt proceeding.  And we further emphasized that holding in footnote 2, where we said: "The trial court, in fact, lacked authority in the instant case to amend the [Original] Judgment.  Once a judgment becomes final, the trial court loses jurisdiction to entertain further motions to change, alter, or modify the final judgment."  *Id*. at 645 n. 2.  Finally, we said plainly that Malin was not barred from seeking to further enforce the Original Judgment.

That is the law of the case that matters here. We are now faced with the "further effort . . . to enforce" the Original Judgment expressly authorized by our opinion in *Malin II*.  We have already held that the Contempt Judgment could not amend the Original Judgment. So, it is in *this* case that the issue presents itself squarely.  The Original Judgment in Malin I plainly did not permit the Prosecutor to condition the search for and production of open records on the payment of costs.  And the trial court's Contempt Judgment did not amend the Original Judgment to add that condition.  So, the only question is, does the Prosecutor still have a statutory right to demand costs as a condition to the obligation to search for and produce open records ordered in the Original Judgment?  For the reasons explained herein, the answer is no, as the statutory right to demand costs has been waived.

17

enforcement power over the Original Judgment is limited to the judgment as originally rendered. Looking then to the language of the Original Judgment, it plainly and unambiguously ordered the Prosecutor to "search for and produce all open records responsive to [Malin's] request." No direct or indirect reference to the Prosecutor's right to charge costs, or to a condition precedent of payment of costs, is contained within its language. This "silence" only underscores that the Prosecutor's permissive statutory right has been waived.

Adding to this is the applicability of the law of the case doctrine to preclude the Prosecutor from asserting this argument on appeal. In particular, the Prosecutor's failure to plead the herein-discussed affirmative defense not only would have barred the Prosecutor from *initially* asserting this argument on appeal in *Malin I*, *see AllStar Capital, Inc.*, 352 S.W.3d at 640, but it also precludes the Prosecutor from raising it in the *present* appeal. *See Walton*, 223 S.W.3d at 128-29. Indeed, *Malin I* affirmed the Original Judgment, and "the decision of a court is the law of the case for all points presented and decided, *as well as for matters that arose prior to the first adjudication and might have been raised but were not.*" *Id.* at 129 (internal citations omitted) (quoting *Alma Tel. Co.*, 40 S.W.3d at 388) (other citations omitted). Having failed to raise the affirmative defense in response to Malin's original petition, the Prosecutor is now precluded under the law of the case doctrine from arguing the condition

18

precedent of payment on this appeal as well.[13]  *Id.*  The Prosecutor is therefore

left with the plain and unambiguous language of the Original Judgment, which

orders, *unconditionally*, that it search for and produce all open records

responsive to Malin's First Request.[14]

As such, we reverse the Current Judgment in this regard.  The trial court

was obligated to enforce the language of the Original Judgment, recognizing that

the Prosecutor had waived all arguments concerning its statutory right to charge

costs by failing to raise noncompliance with the condition precedent of cost

payment as an affirmative defense.  Further, by instead denying Malin's Motion

to Enforce Judgment on that basis, the trial court impermissibly modified the

plain language of the Original Judgment to add a condition – the payment of

---

[13] We reiterate that even had the Prosecutor asserted the condition precedent of payment of fees and costs permitted by § 610.026 as an affirmative defense in Malin's original lawsuit, nothing would have prohibited Malin from replying that the ability to insist on performance of the condition had been earlier waived by the Prosecutor given its failure to assert the permissive statutory right in its written responses to Malin's Sunshine Law requests, particularly as the Sunshine Law requests expressly asked whether searching for and producing open records responsive to the requests would be subject to the payment of any fees or costs.  As we explain, *supra*, in footnote 9, we need not resolve this issue.

[14] We further note that in asserting this argument concerning its statutory right, the Prosecutor is essentially advocating for the modification of the plain and unambiguous language of the Original Judgment.  Not only does the finality of the Original Judgment preclude such a modification, but our holding in *Malin II* expressly cuts off this avenue.  Indeed, in finding the Contempt Judgment did not amend the Original Judgment, we stated in *Malin II* that "[t]he trial court, in fact, lacked authority in the instant action to amend the [Original] Judgment.  Once a judgment becomes final, the trial court loses jurisdiction to entertain further motions to change, alter, or *modify* the final judgment."  631 S.W.3d at 645 n.2 (emphasis added) (citations omitted).

costs – to the Prosecutor's obligation to search for and produce all open records as ordered by the Original Judgment. Such a result cannot stand.

Point III is granted.

Relatedly, in Point I, Malin argues "[t]he trial court erred in holding that the [Prosecutor]'s search for responsive records was sufficient under the Sunshine Law because the proper legal question was whether the search was sufficient under the wording of the Original Judgment[.]" He asserts "the order in the Original Judgment unambiguously required the [Prosecutor] to search for and produce all records responsive to Malin's requests and the [Prosecutor] has admitted that it has not searched thousands of files that might hold such responsive records." We agree.[15]

As discussed in Point III, the language of the Original Judgment plainly and unambiguously ordered that the Prosecutor "*must search for and produce all* open records responsive to [Malin]'s requests, which includes the following: a) any correspondence or communication between the Office of the Prosecuting Attorney of Cole County (or its associates/employees) and the MUSTANG drug task force (or its associates/employees)[.]" (Emphasis added).

Considering this plain and unambiguous language, the trial court did not properly interpret and apply the Original Judgment in finding that the

---

[15] Similar to Point III, Malin fails to specify which of the *Murphy* grounds he is basing his claim on in Point I. However, like Point III, we can easily glean from his argument that he is asserting the trial court misinterpreted or misapplied the Original Judgment. We therefore address Point I on the merits *ex gratia*. *See Interest of S.M.W.*, 658 S.W.3d at 210 n.9.

Prosecutor's search was sufficient. The Prosecutor *openly admitted* thousands of paper files and microfilm *have not been searched* for responsive records.[16] Indeed, he testified there is an unknown number of probable cause statements and police reports stored in paper form *alone* at his office.[17] And, while he claimed that only 1 to 2% of case files he is familiar with involve a MUSTANG-related officer, he admitted that the only way to determine if a MUSTANG-related officer was involved in a particular file "would be to actually pull the file out and read through it[.]"

Further emphasizing this error by the trial court is the fact that a more in-depth search of the Prosecutor's electronic records has yet to be performed, as evidenced by the Prosecutor's testimony that any further searching for electronic communications relating to the Original Judgment would have to be done by an outside firm. This is critical considering how the Prosecutor has repeatedly informed Malin that other responsive documents could be located through such a search. Failing to even search these potentially responsive records is certainly a failure to *search for* and produce *all* open and responsive records in accordance with the Original Judgment. By allowing the Prosecutor to search for anything less than *all* open and responsive records, the trial court erred.

---

[16] Section 610.010(6) defines "public record" as "any record, **whether written or electronically stored**, retained by or of any public governmental body . . . ." (Emphasis added).

[17] Both the trial court and the Prosecutor seemingly forget that the Original Judgment indicated these records may be responsive records under Malin's First Request.

In response, the Prosecutor contends that, even though Malin argues that the Prosecutor's search should have been analyzed under the wording of the Original Judgment rather than the Sunshine Law, Malin has failed to explain the difference between the Sunshine Law's requirements and the Original Judgment's order. The Prosecutor claims neither describe how a search is to proceed, but that "[b]oth require the responding party to produce 'all' open records found." However, this argument only reinforces our conclusion, because one cannot satisfy the requirement to *produce* all open records if one has not even *searched* for all open records. The Prosecutor's contention evidences it has not adhered to either the Sunshine Law *or* the Original Judgment.

Consequently, we hold the trial court erroneously interpreted or applied the Original Judgment in denying Malin's Motion to Enforce Judgment on the basis that the Prosecutor's search was sufficient under the Sunshine Law. A literal interpretation and application of the judgment's language does not lead to that conclusion nor the determination that "[t]here was no evidence that a more expansive search was likely to identify additional responsive records." The Prosecutor's obligation to search for records responsive to Malin's First Request has been clear since the initial order in the Original Judgment. Indeed, the Original Judgment stated,

> Where a custodian of records has refused even to look for public records responsive to a citizen's request, it forces the citizen either to undertake the stress and expense of litigation without knowing whether records exist at all, or abandon any hope of gaining access to any open records.

We therefore reverse this portion of the Current Judgment and remand with instructions for the trial court to enforce the Original Judgment's order that the Prosecutor search for and produce *all* open records responsive to Malin's First Request. This includes, as described in Judge Joyce's original judgment, a search of paper files, microfilm, and electronic records that have not yet been searched for responsive records, including, but not limited to, probable cause statements and police reports.

However, it is important that Malin understands that he, too, is not authorized to re-write the Original Judgment to increase the scope of his First Request. The enforcement of the judgment is limited to his First Request. For this reason, we find unenforceable Malin's tangential requests in his Motion to Enforce Judgment that the Prosecutor be ordered to "[o]btain from the MUSTANG drug task force a list of officers who have served on that task force and the dates on which they served[,]" and "[p]roduce to Malin a list identifying when each of the [requested] searches took place, who conducted each search, and what search terms were used in conducting the search[,]" as requested in his motion's prayer for relief at B. 1. and 7., above. Such requests are outside the confines of his First Request. If Malin wishes to make additional requests to the Prosecutor concerning MUSTANG, he is allowed to do so, as the trial court expressly stated in the Current Judgment and as he previously did in January of 2020.

23

Moreover, we reiterate what we expressed in *Malin I*, that our holding here is limited to enforcing the Original Judgment's order "that only '***open*** records' responsive to the request[] must be produced." 565 S.W.3d at 753. As we stated there,

> [I]f the Prosecutor finds records responsive to the drug task force communication request that the Prosecutor believes are not "open" due to the fact that such record or records contain any information exempt from disclosure by law, the Prosecutor must "provide . . . a written statement of the grounds for [redacting that portion of the record or refusing to provide the record]. Such statement shall cite the *specific* provision of law under which access is denied[.]" § 610.023.4 (emphasis added). *See also* § 610.024.1. In other words, it is implicit in the language of the judgment that the Prosecutor must search for and identify *all* records responsive to the Sunshine Law request, and *if* the Prosecutor believes that certain responsive records are not *open* for a *specific* statutory reason, then the Prosecutor must produce an objection log to Malin at which point Malin would have the opportunity to seek a ruling from the circuit court compelling production of the records after in camera inspection of any disputed records.

*Id.* (second and third alteration in original).

Point I is granted.

## Point II

In his second point on appeal, Malin claims "[t]he trial court erred in holding that, in light of [the Contempt Judgment], '[p]rinciples of collateral estoppel, law of the case, and the public policy of finality'[18] required it to deny Malin's motion to enforce the Original Judgment because none of these

---

[18] By "public policy of finality," we assume the trial court is referring to a general umbrella term encompassing the concepts of preclusion, including claim preclusion and the law of the case doctrine. We do not interpret the Current Judgment as including this as a separate ground in itself for denying Malin's Motion to Enforce Judgment, and therefore do not address it as such.

principles applied to the motion to enforce the Original Judgment . . . ." (Third alteration in original). He asserts,

> [C]ollateral estoppel only applies to final judgments, not interlocutory rulings in an ongoing cause of action and . . . this Court's decision in *Malin II* expressly stated that the [Contempt] Judgment "does not prohibit further efforts by Malin to seek to enforce" the Original Judgment and that "the trial court could have found that [the Prosecutor]'s efforts were sufficient to defeat the motion for contempt without concluding that the same efforts were adequate to fully satisfy the judgment."

We agree the principles of collateral estoppel and the law of the case doctrine did not apply here to justify denying Malin's Motion to Enforce Judgment.

The basis for this portion of the trial court's holding lies in its determination that the Contempt Judgment "ruled on the sufficiency of [the Prosecutor's] efforts to locate and produce records which the [Original Judgment] ordered the Cole County Prosecutor to produce[.]" This finding is based on the following language from the Contempt Judgment: "[The Prosecutor] made a good faith search for records responsive to Malin's Sunshine Law requests, produced records to the extent he could locate them, and offered a forensic search for additional electronic records by an outside information technology firm if Malin wanted to pay for that."

We first analyze whether the principles of collateral estoppel required the trial court to deny Malin's motion based on this language. "We review de novo whether a claim was barred by res judicata or collateral estoppel as a matter of law." *Cornerstone Mortg., Inc. v. Ponzar*, 619 S.W.3d 524, 535 (Mo. App. E.D. 2021) (citation omitted).

25

> Collateral estoppel, or issue preclusion, precludes parties from relitigating issues that have already been decided. The doctrine of collateral estoppel applies to preclude relitigation of an issue if four factors are satisfied: (1) the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. Collateral estoppel can be applied only if a final judgment on the merits has been rendered involving the same issue sought to be precluded in the cause in question.

*Orem v. Orem*, 149 S.W.3d 589, 592 (Mo. App. W.D. 2004) (internal citations omitted).

Because a final judgment on the merits was not rendered in the Contempt Judgment involving the same issue in the present case, collateral estoppel was not applicable here. Our decision in *Malin II* clearly demonstrates this. First, the only issue the Contempt Judgment disposed of was Malin's Motion for Civil Contempt. *Malin II*, 631 S.w.3d at 645. "'Civil contempt is for the protection of a party to the litigation, the party for whose benefit the order, judgment or decree was entered. Its function is to provide a *coercive* means to compel the other party to the litigation to comply with relief granted to his adversary.'" *Teefey v. Teefey*, 533 S.W.2d 563, 566 (Mo. banc 1976) (emphasis added) (quoting *Mechanic v. Gruensfelder*, 461 S.W.2d 298, 304 (Mo. App. 1970)). "Contempt is available only where a party has been ordered to perform or not to perform a specific act and yet *refuses to do so*." *State ex rel. Euclid Plaza Assocs., L.L.C. v. Mason*, 81 S.W.3d 573, 577 (Mo. App. E.D. 2002) (emphasis added) (citation omitted). When such is the case, "the two most common remedies for enforcing

26

civil contempt are imprisonment and *per diem* fines." *Wuebbeling v. Wuebbeling*, 574 S.W.3d 317, 325 (Mo. App. E.D. 2019) (citation omitted).

That issue, which addressed whether the Prosecutor had failed to abide by the Original Judgment's orders in the context of *a motion for civil contempt*, is entirely different than the issue and context we face here, which seeks through a *motion to enforce judgment* to compel compliance with the Original Judgment as to records not yet searched. Such a motion seeks further order from the court to enforce its judgment, which is in accordance with the court's inherent authority to issue any order necessary to effectuate its judgement. *See State ex rel. Cullen v. Harrell*, 567 S.W.3d 633, 639-40 (Mo. banc 2019). This distinction was made clear in *Malin II* when we recognized "that the trial court could have found that the prosecutor's efforts were sufficient to defeat the motion for contempt *without concluding* that those same efforts were adequate to fully satisfy the [Original] Judgment." 631 S.W.3d at 646 n.4 (emphasis added).

Not only did the Contempt Judgment "merely dispose[] of the only issue then pending before it – Malin's Motion for Contempt[,]" we also found in *Malin II* that "[t]he [Contempt] Judgment does not amend the [Original] Judgment,[] *does not declare the [Original] Judgment fully satisfied*, and *does not prohibit further efforts by Malin to seek to enforce it*." *Id.* at 645 (emphasis added) (footnote omitted). Such language clearly demonstrates the Contempt Judgment was not a final judgment on the merits addressing whether the Prosecutor's

27

efforts were sufficient to fully satisfy the Original Judgment. Consequently, contrary to the trial court's finding, collateral estoppel was *not* applicable here.

The law of the case doctrine was equally inapplicable. In analyzing this issue, we utilize the description of the law of the case doctrine as provided in Point III above.

As our decision in *Malin II* makes clear, the contempt proceedings, and Malin's Motion to Enforce Judgment, do not involve "the same issues," making the law of the case doctrine inapplicable. In *Malin II*, we determined that Judge Joyce's finding in the Contempt Judgment that "Malin had failed to carry his burden of proof of demonstrating a violation of the court's orders . . . *occurred in the context of denying Malin's Motion for Civil Contempt*[.]" 631 S.W.3d at 645 n.3 (emphasis added). In fact, we explicitly stated we were expressing *no opinion* on whether that finding had any impact on future actions pertaining to the satisfaction or enforcement of the Original Judgment. *Id.*

Moreover, we reiterate that *Malin II* found the Contempt Judgment only disposed of the issue of the Motion for Civil Contempt, an entirely different issue than the one at issue here; the Contempt Judgment neither declared the Original Judgment satisfied nor prohibited Malin from seeking to enforce it. *Id.* at 645. That is why we refused in *Malin II* to address the question of whether the Original Judgment had been satisfied, stating such a question was *premature* at that time. *Id.* at 646 n.4. Considering *Malin II* in its entirety, we find no

28

directive in that decision which requires the trial court to give force to the Contempt Judgment in the way it did here.[19]

Accordingly, it was error for the trial court to deny Malin's Motion to Enforce Judgment on "[p]rinciples of collateral estoppel, law of the case, and the public policy of finality . . . ." None of those principles were applicable here. We therefore reverse that portion of the trial court's judgment denying Malin's Motion to Enforce Judgment.

Point II is granted.

---

[19] We note the trial court found that Malin's request to compel the Prosecutor to search further for records was not granted, and that "Malin either raised or could have raised that issue on appeal in *Malin* [*II*]." Presumably, in making this finding, the trial court is utilizing that aspect of the law of the case doctrine which states "the decision of a court is the law of the case for all points presented and decided, *as well as for matters that arose prior to the first adjudication and might have been raised but were not.*" *Walton*, 223 S.W.3d at 129 (emphasis added) (internal citations omitted) (quoting *Alma Tel. Co.*, 40 S.W.3d at 388) (other citation omitted). But again, the Contempt Judgment was confined to the narrow issue of Malin's Motion for Civil Contempt, meaning that Judge Joyce's implicit denial of Malin's request within that judgment was also limited to the context of his Motion for Civil Contempt. *See Malin II*, 631 S.W.3d at 645, 645 n.3, 646 n.4. We therefore find that aspect of the law of the case doctrine inapplicable here as well.

## Conclusion

For the foregoing reasons, we reverse the Current Judgment denying Malin's Motion to Enforce Judgment. The case is remanded to the trial court for further proceedings consistent with this opinion.[20]

_____
W. DOUGLAS THOMSON, JUDGE

Judge W. Douglas Thomson writes for the majority. Presiding Judge Mark D. Pfeiffer concurs.

Judge Alok Ahuja writes a dissent.

---

[20] Malin filed a Motion for Attorney Fees on Appeal and said motion was taken with the case. Malin's motion is granted. "When fixing the amount of attorney's fees to be awarded, courts are considered experts, and their expertise extends to the value of appellate services." *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 648 (Mo. App. W.D. 2002) (citation omitted). Though we typically remand to the trial court to determine the reasonableness of the fees requested, in this case we choose to exercise our authority to allow and fix the amount of attorney's fees on appeal, and therefore grant Malin's Motion for Attorney Fees on Appeal in the amount of $10,000. *See id.*; *Frontenac Bank v. GB Invs., LLC*, 528 S.W.3d 381, 397 (Mo. App. E.D. 2017).



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

AARON M. MALIN, )
)
Appellant, )
)
v. ) WD85703
)
COLE COUNTY PROSECUTING ) Filed: September 19, 2023
ATTORNEY, )
)
Respondent. )

### DISSENTING OPINION

To borrow the words of Yogi Berra, Malin's Motion to Enforce, and the current appeal, are "deja vu all over again." Prior to filing his Motion to Enforce, Malin filed a Motion for Contempt which made precisely the same argument that he makes again now: that the original judgment, and our affirmance of that judgment, barred the Prosecutor from demanding that Malin pay the costs to search for and produce responsive documents. The circuit court denied Malin's Motion for Contempt, and specifically found that Malin had failed to prove that the Prosecutor's demand for costs violated the original judgment. Malin appealed, and we affirmed the circuit court's judgment.

Given the circuit court's contempt judgment, and Malin's unsuccessful appeal of that judgment, I am unable to understand how the majority can allow

Malin to re-assert the same argument he made in the *Malin II* appeal: that the original judgment and our decision in *Malin I* foreclose the recovery of search and production costs. There is no justification for giving Malin another turn at the plate, when he struck out – both in the circuit court and here – once before. As the circuit court properly held, Malin's request for a "do-over" violates the law of the case doctrine, and should be summarily rejected. I respectfully dissent.

**Discussion**

The majority repeatedly claims that the issue involved in the earlier contempt proceedings was "entirely different than the issue and context we face here." Maj. Op. at 26. On the contrary, the circuit court in the contempt proceeding decided the precise question Malin now re-asserts: whether the original judgment prohibited the Prosecutor from demanding payment of his search and production costs under § 610.026, RSMo. Resolution of that issue was central to the contempt proceeding, because the first issue to be decided on a contempt motion is whether the alleged contemnor is, or is not, violating an earlier judgment.

As the circuit court recognized in its contempt judgment,

"A party alleging contempt establishes a prima facie case for civil contempt when the party proves: (1) the contemnor's obligation to perform an action as required by the decree; and (2) the contemnor's failure to meet the obligation." "The alleged contemnor then has the burden of proving that person's failure to act was not due to her own intentional and contumacious conduct."

*D.R.P. v. M.P.P.*, 484 S.W.3d 822, 826-27 (Mo. App. W.D. 2016) (citations omitted). In a contempt proceeding, "[t]he movant bears the burden of

demonstrating a violation of the court's orders.  Then the alleged contemnor

must prove the inability defense by showing inability which was not intentionally

and contumaciously brought about." *A.G. v. R.M.D.*, 730 S.W.2d 543, 546 (Mo.

1987); *see also, e.g.*, *Merriweather v. Chacon*, 639 S.W.3d 494, 502 (Mo. App.

E.D. 2021); *Wuebbeling v. Wuebbeling*, 574 S.W.3d 317, 327-28 (Mo. App. E.D.

2019); *Reinhart v. Reinhart*, 554 S.W.3d 524, 531 (Mo. App. E.D. 2018); *Walker

v. Lonsinger*, 461 S.W.3d 871, 875-76 (Mo. App. W.D. 2015); *In re Marriage of

Yonker*, 423 S.W.3d 848, 856 (Mo. App. S.D. 2014).

In its contempt judgment, the circuit court found that Malin lost at _both_

stages of the contempt inquiry:  (1) he had failed to make a prima facie case by

proving a violation of the original judgment; _and_ (2) the Prosecutor had

established that he did not acted in intentional disregard of the court's original

judgment.  The court's finding that Malin had failed to prove a violation of the

original judgment is plainly based on the court's conclusion that the Prosecutor

was entitled to collect his search and production costs:

> The Court concludes that Malin failed to meet his burden of proof to show that Thompson failed to abide by the Court's 2017 order.  Thompson made a good faith search for records responsive to Malin's Sunshine Law requests, produced records to the extent he could locate them, and offered a forensic search for additional electronic records by an outside information technology firm if Malin wanted to pay for that.  Moreover, Thompson paid Malin's money judgment promptly and in full, showing good faith from the outset.

The court then stated, "[a]s an additional and alternative basis for overruling

Malin's motion," that the Prosecutor "has met his burden to show that [he] did

3

not act in intentional contempt for the Court or its orders."

Malin appealed the adverse contempt judgment. On appeal, he *attempted* to challenge the circuit court's conclusion that the original judgment did not foreclose the Prosecutor from recovering costs under § 610.026, RSMo. As we explained in our opinion in *Malin II*:

> While not clear, Malin's complaints in Points I and II seem to derive from what he perceives as an inconsistency between the judgment in Malin I and the trial court's denial of his motion for contempt in the instant action. The judgment in Malin I unequivocally ordered the Prosecutor to "search for and produce all open records responsive" to Malin's first sunshine request. ***Malin argues that the Prosecutor's partial production and accompanying request for him to pay for any additional search necessary to produce additional documents is not in accord with the remedy ordered, and affirmed by this Court, in Malin I***. Malin asserts that Malin I, as a remedy for the knowing and purposeful violations of the Sunshine Law, simply ordered the Prosecutor's office to conduct the search for (and to produce) said responsive documents; and did not condition the Prosecutor's duty in any manner (such as advance payment by Malin for the costs associated with producing such records).

*Malin v. Cole Cnty. Prosecuting Atty.*, 631 S.W.3d 638, 646 n.4 (Mo. App. W.D. 2021) (emphasis added). In light of the emphasized language, I cannot understand how the majority can plausibly claim that the issues presented in *Malin II* were "*entirely different* than the issue and context we face here." Maj. Op. at 26 (emphasis added).

Despite Malin's attempt in *Malin II* to raise the exact same question the majority decides today, we affirmed the circuit court's denial of Malin's contempt

4

motion.  Although *Malin II* affirmed the contempt judgment, and acknowledged that "the trial court did find that Malin had failed to carry his burden of proof of demonstrating a violation of the court's orders," we took no position as to "what impact that finding would have in any future action taken by Malin to seek enforcement of the Malin I Judgment."  631 S.W.3d at 645 n.3.

We should decide the question left open in *Malin II*, and hold – consistent with well-established legal principles – that Malin cannot once again assert arguments which he raised, and lost, before.  It is a commonplace that a prior appellate decision "is the law of the case for all points presented and decided, as well as all matters that arose before the first adjudication and might have been raised but were not."  *Am. Eagle Waste Indus., LLC v. St. Louis Cnty.*, 379 S.W.3d 813, 825 (Mo. 2012) (citation and internal quotation marks omitted).  The Supreme Court explained that "[t]he doctrine of law of the case is necessary to ensure uniformity of decisions, protect the parties' expectations, and promote judicial economy.  The doctrine is 'more than merely a courtesy: it is the very principle of ordered jurisdiction by which the courts administer justice.'"  *Id.* (citations omitted).  Because the law of the case doctrine applies to "all matters . . . that might have been raised" in the earlier appeal, it is irrelevant whether Malin has refashioned his arguments from *Malin II* in the current appeal.

Here, the circuit court's contempt judgment decided that the Prosecutor's demand for payment of his search and production costs was consistent with the original judgment.  Malin actually *attempted* to challenge that ruling in the *Malin*

5

*II* appeal, but lost.  The law of the case bars him for raising that issue again now.  Although the law of the case doctrine is subject to limited exceptions, none of those exceptions applies here.  *In re Est. of Corbin*, 166 S.W.3d 102, 106 (Mo. App. W.D. 2005) (noting exceptions to law of the case doctrine for mistakes of fact; new evidence; a subsequent change in law; or manifest injustice).[1]

The majority suggests that the present appeal arises in a different "context" than the contempt proceeding.  I disagree:  both the contempt proceedings, and the present Motion to Enforce, involve post-judgment attempts by Malin to enforce his interpretation of the original judgment, against a Prosecutor who contends that the original judgment permits him to demand payment of his response costs.  I am uncertain what difference in "context" the majority perceives.

I recognize that, in *Malin II*, this Court stated that "the trial court *could have* found that the prosecutor's efforts were sufficient to defeat the motion for contempt without concluding that those same efforts were adequate to fully satisfy the Malin I Judgment."  631 S.W.3d at 646 n.4 (emphasis added).  That is an accurate statement of the law:  because a finding of contempt requires a court

---

[1]  The circuit court's most recent judgment also referred to collateral estoppel principles.  The Missouri Supreme Court has held, however, that "'the doctrines of collateral estoppel and res judicata apply only in a second, subsequent lawsuit.'"  *Olofson v. Olofson*, 625 S.W.3d 419, 428 (Mo. 2021) (quoting *State ex rel. Cullen v. Harrell*, 567 S.W.3d 633, 641 n.5 (Mo. 2019)).  While it could be argued that the original litigation, the contempt proceedings, and Malin's motion to enforce are separate and independent proceedings, and that collateral estoppel may therefore be available here, because of this complication I put collateral estoppel principles to one side.  The law of the case doctrine suffices to establish the meritlessness of the current appeal.

6

to find that the alleged contemnor intentionally or contumaciously violated a prior decree, a court _could_ deny a contempt motion without finding the alleged contemnor to be "in compliance." But that is not what the circuit court's contempt judgment did here: it explicitly found _both_ (1) compliance with the original judgment; _and_ (2) no intentional or contumacious behavior. It is the first finding which forecloses the current appeal.

A prosaic example may make this clearer. Contempt motions appear to be filed most frequently in dissolution actions. Imagine a dissolution decree in which Father is awarded sole legal custody of Child, but Father and Mother are ordered to equally share in Child's unreimbursed medical and dental costs. Father later files a motion for contempt, arguing that Mother has failed to pay her share of Child's uninsured orthodontia bills. Mother contends that she should not be required to share in the orthodontia costs, because Father did not notify or consult with her before incurring those expenses. The circuit court agrees with Mother, finds that she is not violating the original dissolution decree, and denies Father's contempt motion. Father appeals. He argues that, by recognizing a prior-consultation requirement, the circuit court improperly modified the original dissolution decree's award of sole legal custody to him. This Court affirms. Can Father then reassert _the exact same arguments_, by now captioning his motion as a "Motion to Enforce"? I believe the answer is obviously, and emphatically, "No" – the denial of Father's contempt motion, in the circuit court and on appeal, fully and finally resolved Mother's obligation to share in the

7

previously incurred orthodontia costs.  Father cannot seek a "second bite at the apple" in a "Motion to Enforce" – whether the judgment in the contempt proceeding was right or wrong.  The same analysis, and result, should apply here.

## Conclusion

"'Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties.'" *Sexton v. Jenkins & Assocs., Inc.*, 152 S.W.3d 270, 274 (Mo. 2004) (quoting *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931)).  Because the majority opinion violates these foundational, and salutary, principles, I respectfully dissent.

Alok Ahuja, Judge